Elizabeth Hopkins – CA State Bar No. 324431
ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
smeter@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

*Attorneys for Plaintiff*
DONALD A. WALLACE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD A. WALLACE,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNATIONAL PAPER COMPANY, A New York Corporation; FIDUCIARY REVIEW COMMITTEE Of The RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY; PLAN ADMINISTRATOR Of The RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY; And ALIGHT SOLUTIONS LLC (Formerly Known As Hewitt Associates LLC),<br><br>Defendants. | Case No. 8:20-cv-00242<br><br>**COMPLAINT FOR VIOLATIONS OF ERISA**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e) and (f).

## VENUE

2. Venue lies in the Central District of California pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Retirement Plan of

COMPLAINT

165026.1

International Paper Company ("Retirement Plan") is administered in this district, the breaches occurred in this district, and Defendants International Paper Company ("International Paper"), Fiduciary Review Committee of the Retirement Plan, the Plan Administrator of the Retirement Plan ("Retirement Plan Administrator"), , and Alight Solutions LLC (formerly known as Hewitt Associates LLP) may be found in this judicial district.

## NATURE OF THE CASE

3. Plaintiff Donald Wallace brings this suit against Defendants under ERISA, for injunctive and other equitable relief to enforce rights under and remedy violations of ERISA, and to recover statutory penalties for Defendants' failure to comply with ERISA's disclosure requirements. Alternatively, with respect to Defendant Alight, Plaintiff seeks to recover damages stemming from professional negligence and negligent misrepresentation under California law.

## THE PARTIES

4. Plaintiff Donald A. Wallace is, and has been at all relevant times, a participant as defined by ERISA Section 3(7), 29 U.S.C. § 1002(7), in the Retirement Plan. Mr. Wallace is a resident of Laguna Hills, California.

5. Defendant International Paper is a New York corporation with its principal place of business in Memphis, Tennessee. International Paper is a fiduciary of the Plan within the meaning of ERISA Section 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the Plan's assets, it exercises discretionary authority or discretionary control respecting management of the Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Plan. Among other authority, International Paper has the authority to appoint the Retirement Plan Administrator and Severance Plan Administrator and exercises discretion in selecting and monitoring the Plan Administrators and/or other fiduciaries. Plaintiff worked for International Paper at its Anaheim, California location throughout his long career.

6. Defendant Fiduciary Review Committee is a named fiduciary pursuant to the governing Plan document for the Retirement Plan of International Paper Company ("Retirement Plan") with the power to appoint the Plan Administrator as that term is defined in ERISA Section 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). The Fiduciary Review Committee also has the power to appoint the Retirement Plan Financial Officer, a named fiduciary under the governing Retirement Plan document. According to the governing Retirement Plan document, "[t]he Fiduciary Review Committee has the full power and authority to designate and allocate fiduciary responsibility to one or more other fiduciaries…and to change such designations or allocations." The Fiduciary Review Committee is a fiduciary within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i).

7. Defendant Retirement Plan Administrator is the Administrator of the Retirement Plan as defined by ERISA Section 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). The Retirement Plan Administrator is a fiduciary of the Plan within the meaning of ERISA Section 3(21), 29 U.S.C. § 1002(21), in that it has the power to exercise authority or control respecting management the Retirement Plan, and exercises discretionary authority or discretionary control respecting management of the Retirement Plan. The Retirement Plan Administrator has, among other things, the power and authority (i) to interpret the Retirement Plan, and to resolve ambiguities, inconsistencies and omissions, (ii) to determine the amount of benefits which shall be payable to any person in accordance with the provisions of the Retirement Plan, (ii) to provide a full and fair review to any Participant whose claim for benefits has been denied in whole or in part, (iv) to appoint, remove and change a committee or board to assist in the administration of the Retirement Plan, (v) to designate other persons to carry out any duty or power which would otherwise be a fiduciary responsibility of the Retirement Plan Administrator under the terms of the Retirement Plan, (vi) to retain counsel, employ agents and provide for such ministerial, clerical, accounting, recordkeeping and consulting or other services as

1  may be required the Retirement Plan Administrator's address is in Memphis, Shelby
2  County, Tennessee.

3         8.      Defendant Alight is an Illinois limited liability company with its
4  principal place of business in Illinois. Beginning in 2008, Alight's predecessor,
5  Hewitt, provided record-keeping and third-party administration services to the
6  Retirement Plan. Alight maintains an office in Irvine, Orange County, California.
7  Upon information and belief, pursuant to the Administrative Committee's delegation
8  of authority, Hewitt operated the International Paper Employee Service Center and a
9  website at www.My-IP.com, and issued pension benefit statements and other
10 communications on International Paper letterhead.

11        9.      Alight holds itself out as providing "a total retirement approach to help
12 drive better solutions and outcomes," based on "40+ years of knowledge, expertise,
13 and innovation managing retirement plans for large organizations, helping people
14 save, plan and retire confidently." Alight publicly asserts that its defined benefit plan
15 administration will enable employees "to retire confidently with industry-leading
16 expertise, technology and support," with "a customer experience designed to help
17 [employees] fully understand their options" and "tools and rigorous processes that
18 assure quality in all aspects of the services we deliver," making "essential plan
19 information easy to access and navigate."

20       10.     Upon information and belief, International Paper, the Fiduciary Review
21 Committee, and/or the Retirement Plan Administrator contracted with Hewitt to
22 carry out certain responsibilities for the Retirement Plan administration, including its
23 pension benefit statement responsibilities under ERISA Section 105(a), 29 U.S.C. §
24 1025(a), and its responsibility for processing pension applications.

25       11.     Hewitt's services included providing an online platform that allowed
26 Retirement Plan participants to request statements of their accrued pension benefits
27 based on potential future employment termination dates and benefit commencement
28

dates, in purported satisfaction of the Fiduciary Review Committee's and/or the Retirement Plan Administrator's obligations under ERISA Section 105(a).

## FACTS

### Pertinent Retirement Plan Terms

12. The Retirement Plan is an employee pension benefit plan as defined by ERISA Section 3(2), 29 U.S.C. § 1002(2), sponsored by International Paper. The Plan is a defined benefit pension plan, meaning that each participating employee is entitled to a fixed periodic payment during retirement based on a pension calculation formula set forth in the Retirement Plan, and each surviving spouse of a participating employee is entitled to a fixed periodic payment during his or her lifetime unless he or she has validly waived the survivor benefit.

13. The Plan provides:

> The Fiduciary Review Committee shall establish a charter for carrying out its duties under the Plan, **including procedures for the periodic review on at least a quarterly basis of** the investment policy of the Plan; of the management and control of the assets of the Plan, including performance asset allocation, funding status and related actuarial reports; and of **the administration of the Plan**, and shall review the results of performance of any allocated fiduciary duties by the Plan Financial Officer, the Plan Administrator and any other fiduciary designated by the Fiduciary Review Committee. The Fiduciary Review Committee shall determine whether any allocations and designations of fiduciary responsibility shall be continued or changed. Any actions taken by the Fiduciary Review Committee with respect to the Plan, together with the reasons therefor, shall be recorded in the minutes of such meetings of the Fiduciary Review Committee. (emphasis added).

14. As used in ERISA, "accrued benefit" means the participant's benefit expressed as an annual benefit beginning at normal retirement age, or the actuarial equivalent of that amount. ERISA §§ 3(23)(A), 204(c)(3), 29 U.S.C. §§ 1002(23)(A), 1054(c)(3). The Retirement Plan defines "accrued benefit" consistent with these rules.

## Pertinent Severance Plan Terms

15. The Severance Plan provides that it is intended to meet the requirements of ERISA. It was established to provide a termination allowance for eligible employees. Eligible employees include salaried employees of International Paper.

## Plaintiff's Employment and Pension Service

16. Mr. Wallace began his employment with Crown Zellerbach on January 1, 1981.

17. On information and belief, Crown Zellerbach was acquired by Gaylord Container Company on November 17, 1986. Mr. Wallace continued to work for Gaylord Container Company until January 13, 1988.

18. On April 2, 1991, Mr. Wallace began working for Weyerhaeuser Corporation.

19. On information and belief, on February 28, 2002, Gaylord Container Company was acquired by Temple-Inland, Inc.

20. On information and belief, on August 4, 2008, a portion of Weyerhaeuser Corporation was purchased by International Paper and on that date, Mr. Wallace became an employee of International Paper.

21. The Retirement Plan has separate components comprising different divisions of the company. Due to the acquisitions, Mr. Wallace was a participant in two components of the Retirement Plan—the Temple-Inland Retirement Plan and the Restoration Plan of International Paper, both of which provide retirement benefits under the umbrella of the Retirement Plan.

22. Throughout his years while working for International Paper, Mr. Wallace had frequently reviewed his pension benefit, watching it grow as he continued to work. He reviewed it often enough to have saved it as a favorite on his internet browser.

23. Mr. Wallace also received annual pension benefit statements, which he reviewed and upon which he relied.

24. Mr. Wallace also employed a financial advisor from Edward Jones who provided an overall retirement income plan for Mr. Wallace each year, based in large part on the amount of his Retirement Plan benefit as reported by International Paper and by Alight (Hewitt).

25. For the year ending December 31, 2015, Mr. Wallace received a pension benefits statement, which showed that, based on his years of service and compensation, Mr. Wallace's monthly retirement benefit was $7,342.88 a month for a single life annuity.

26. On December 15, 2016, Mr. Wallace, while still an employee of International Paper, was approached by Gary Gavin, Regional Vice President of International Paper, who offered Mr. Wallace a severance package. At that time, Mr. Wallace had no intent to retire or cease employment.

27. Mr. Wallace told Mr. Gavin that he would consider the severance package but that he needed to look into his Retirement Plan benefits before making any decision. Mr. Gavin informed Mr. Wallace that he needed to make a decision about the severance package offer before the end of December 2016.

28. On December 16, 2016, Mr. Wallace had a conversation with Alan Carpenter who explained the details of the severance. Mr. Wallace discussed his Retirement Plan with Mr. Carpenter and that he had a statement from the prior year and asked how he could get an estimate for 2016. Mr. Carpenter told Mr. Wallace that if he went online, he could request an estimate but that they would use salary from 2015 because the 2016 salary was not yet reported. Mr. Wallace told him he had a statement for the 2015 year and Mr. Carpenter told Mr. Wallace that the pension would only go up for 2016.

29. A critical component of accepting the severance package was the amount of Mr. Wallace's monthly pension benefit. Mr. Wallace made this known to

both Mr. Gavin and Mr. Carpenter and both knew this was a critical component of whether or not to leave employment.

30. In evaluating whether to terminate employment and accept the severance package, it was imperative to Mr. Wallace that he have sufficient retirement income to continue to live comfortably in California. The sufficiency of his retirement was material to his decision of whether to accept the severance package.

31. On December 29, 2016, Mr. Wallace accepted the severance package, although he had reservations about leaving International Paper.

32. On information and belief, International Paper did not want Mr. Wallace to compete in the marketplace and made the offer under the Severance Plan in order to avoid competition.

33. Under the severance agreement, Mr. Wallace's employment was set to terminate on April 3, 2017.

34. As Mr. Wallace continued to work with his end date approaching, in January 2017, he requested an updated Retirement Plan benefit statement. On January 25, 2017, on International Paper letterhead, Mr. Wallace was provided a Pension Estimate Calculation Statement for both the Temple-Inland Salaried portion and Restoration Plan portion of the Retirement Plan.

35. The results, which were in line with the 2015 statement and earlier statements, showed Mr. Wallace's monthly pension was $2,652.39 for International Paper Salaried and $5,927.61 for Temple-Inland Salaried for a total monthly pension benefit of $8,580 (as a single life annuity). The statement showed an employment termination date of April 3, 2017, retirement date of May 1, 2017, and annual pay of $210,112.

36. The "Pension Calculation Details for Temple-Inland Salaried" showed: Participant's age at retirement as 67.3333, his wife's (his beneficiary) age at retirement as 63.2500, his Vesting Service at Termination Date as 20.4242, his

Credited Service at Termination Date as 16.0830, his Monthly Final Average Earnings as $21,477.39, his Accrued Benefit as $4,848.27, his adjusted Benefit as $5,927.61, and his late retirement factor as 1.038300.

37. On April 3, 2017, Mr. Wallace ended his long-time employment with International Paper and shortly thereafter received payment under the Severance Plan.

38. In November 2017, Mr. Wallace requested information about commencing his Retirement Plan benefits. Mr. Wallace received a packet explaining "What YOU Need to Do." Included in the package was a Retirement Plan benefits statement which showed a monthly benefit of $9,312.93 as a single life annuity.

39. Mr. Wallace completed the retirement application in November 2017, with benefits commencing January 31, 2018. He chose a 100% joint and survivor annuity benefit which reduced his monthly benefit amount from $9,312.93 to $7,448.03.

40. On December 1, 2017, Mr. Wallace received a "Pension Election Confirmation Statement – Retirement Plan of International Paper." The forms confirmed that he would receive a monthly joint and survivor annuity benefit of $7,448.03 per month. He and his wife signed and notarized the forms and returned them pursuant to the stated instructions.

41. On December 13, 2017, Mr. Wallace received confirmation that his Retirement Plan benefit had been authorized to commence with the first monthly payment to begin on January 1, 2018.

42. Consistent with the statements and retirement application, Mr. Wallace received his first Retirement Plan check on January 31, 2018, in the amount of $7,448.03.

43. On February 28, 2018, Mr. Wallace received his second Retirement Plan check in the amount of $7,448.03.

44. On March 14, 2018, Mr. Wallace received a phone call from the employee service center stating they were reducing his monthly benefits payment to $2,800. Mr. Wallace was not given any reason why his monthly benefit was dramatically reduced other than "there was an audit." Mr. Wallace asked to speak to a supervisor and was told one would call him back.

45. On March 19, 2018, Mr. Wallace spoke to Dave at the employee service center who told Mr. Wallace that he could not provide an explanation of why his benefit had been reduced but that he would send him an appeal form and that he could complete the form and mail it to Claim and Appeal Management.

46. On August 10, 2018, Mr. Wallace appealed the reduction of his retirement benefit. On December 31, 2018, the Retirement Plan denied his appeal.

## Plaintiff's Reliance

47. In issuing pension benefit statements, pension election paperwork, and pension payments, Defendants intended to, and did, induce reliance on the part of Plaintiff. The sole purpose for requesting a pension benefit statement is to learn the amount of a participant's pension benefit upon retirement.

48. Furthermore, as Defendants were well aware, in deciding whether or not to accept the severance package, Mr. Wallace relied on the pension benefit statements which was material to his determination of whether to end his employment and accept severance benefits. Defendants intended Mr. Wallace to rely on the Retirement Plan information provided by Alight in their direction to Mr. Wallace of how to obtain updated information about his retirement in deciding whether to accept the severance package.

49. Due to International Paper's acquisitions of Mr. Wallace's prior employers, and the incorporation of the retirement benefits earned while an employee of acquired companies, it is quite complicated to even determine the governing plan documents, much less to understand and apply the plan terms, and Mr. Wallace, therefore, had no reasonable way to verify the benefit amounts

provided in pension benefit statements, pension election paperwork, and pension payments.

## FIRST CLAIM FOR RELIEF

**Claim for Violation of ERISA Section 404(a), 29 U.S.C. § 1104(a), Against Defendants International Paper, Fiduciary Review Committee and the Retirement Plan Administrator**

50. Plaintiff incorporates the above paragraphs as though fully set forth herein.

51. ERISA Section 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan, and that a fiduciary act under a prudent person standard of care. These duties include the duty to provide complete and accurate information regarding participants' benefits.

52. International Paper, the Fiduciary Review Committee and the Retirement Plan Administrator breached their fiduciary duties to Plaintiff by acts and omissions, including failing to ensure that they or their delegees provided Plaintiff with complete and accurate information regarding the amount of the Retirement Plan benefit.

53. Plaintiff reasonably relied on the Retirement Plan information he received in deciding whether to accept the severance package and retire.

54. Plaintiff has been harmed by the fiduciary breaches of International Paper, the Fiduciary Review Committee and the Retirement Plan Administrator in that he received and relied on inaccurate information about his retirement income in making a decision whether to accept the severance package and retire.

## SECOND CLAIM FOR RELIEF

**Claim for Violation of ERISA Section 404(a), 29 U.S.C. § 1104(a),**

**Against Defendant Fiduciary Review Committee**

55. Plaintiff incorporates paragraphs 1 through 49 as though fully set forth herein.

56. Fiduciary Review Committee is the named fiduciary as defined by ERISA Section 402(a) with the power to appoint and remove both the Retirement Plan Administrator and Alight.

57. ERISA imposes on fiduciaries a duty to monitor actions of appointed fiduciaries at reasonable intervals, and courts generally follow the guidelines with respect to monitoring provided by the Department of Labor. 29 C.F.R. § 2509.75-8.

58. The Fiduciary Review Committee had the duty to monitor fiduciaries that it appointed both under ERISA and under the express terms of the Retirement Plan, which provides, in relevant part:

> The Fiduciary Review Committee shall establish a charter for carrying out its duties under the Plan, **including procedures for the periodic review on at least a quarterly basis of** …**the administration of the Plan**, and shall review the results of performance of any allocated fiduciary duties by the Plan Financial Officer, the Plan Administrator and any other fiduciary designated by the Fiduciary Review Committee. The Fiduciary Review Committee shall determine whether any allocations and designations of fiduciary responsibility shall be continued or changed.

59. The Fiduciary Review Committee failed in its ERISA and plan duties to monitor Alight, its appointed fiduciary, as Alight continuously, for years, overstated Mr. Wallace's benefits and caused him to rely on misinformation to his detriment. Defendant Fiduciary Review Committee has, therefore, breached its fiduciary duty to monitor.

60. The Fiduciary Review Committee further failed to monitor the Retirement Plan Administrator, the members of which were appointed by the Review Committee. The Retirement Plan Administrator was given the duty to

determine the amount of benefits payable to any person in accordance with the provisions of the Retirement Plan and failed to accurately determine the benefits payable to Mr. Wallace for many years.

61. Plaintiff has been harmed by Defendant's failure to monitor both Alight and the Retirement Plan Administrator.

## THIRD CLAIM FOR RELIEF

### Claim for Violation of ERISA Section 404(a), 29 U.S.C. § 1104(a), Against Defendant Alight

62. Plaintiff incorporates Paragraphs 1 through 49 as though fully set forth herein.

63. ERISA Section 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan, and that a fiduciary act under a prudent person standard of care. These duties include the duty to provide complete and accurate information regarding participants' benefits.

64. At all relevant times, Alight was a fiduciary of the Retirement Plan within the meaning of ERISA Section 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting management of the Plans, and/or it had discretionary authority or discretionary responsibility in the administration of the Retirement Plan. In particular, Alight performed pension calculations with the use of its proprietary "innovative" recordkeeping software. On information and belief, Alight programmed its benefit estimate calculation software by interpreting the terms of the Retirement Plan.

65. Alight breached its fiduciary duty to Plaintiff by acts and omissions, including failing to correctly apply the Retirement Plan provisions in calculating

Plaintiff's Retirement Plan benefits and repeatedly providing Plaintiff with inaccurate information regarding the amounts of his pension.

66. Plaintiff reasonably relied on the pension information he received in both planning for his retirement and in deciding whether to accept the severance package.

67. Plaintiff has been harmed by Alight's breaches in that he received and relied on inaccurate information about his retirement income in planning for retirement and deciding whether to end his long-term career at International Paper and accept the severance package.

## FOURTH CLAIM FOR RELIEF

## Claim for Violation of ERISA Section 105, 29 U.S.C. § 1025, Against Defendants Retirement Plan Administrator

68. Plaintiff incorporates Paragraphs 1 through 49 as though fully set forth herein.

69. ERISA Section 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), requires that a plan administrator furnish pension benefit statements to defined benefit plan participants. Specifically, a plan administrator must furnish a pension benefit statement (1) at least once every three years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished, and (2) to a participant or beneficiary of the plan upon written request.

70. ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief from a violation of ERISA.

71. ERISA Section 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant to bring a civil action for the relief provided for in ERISA Section 502(c), 29 U.S.C. § 1132(c).

72. ERISA Section 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides that any administrator who fails to meet the requirements of ERISA §Section 105(a), 29 U.S.C. § 1025(a), with respect to a participant may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper. For this purpose, each violation with respect to any single participant shall be treated as a separate violation. 29 C.F.R. § 2575.502c-1 increases the penalty under ERISA Section 502(c) to $110 per day.

73. The Retirement Plan Administrator violated Section 105(a) by failing to provide Plaintiff with accurate statements of his Retirement Plan benefits and/or by failing to monitor the performance of its delegate that provided pension statements to Plaintiff.

74. Plaintiff has been harmed by the Retirement Plan Administrator's breaches in that he received and relied on inaccurate information about his Retirement Plan benefits in planning for retirement and deciding whether to accept the severance package.

## FIFTH CLAIM FOR RELIEF

## Claim for Violation of ERISA Section 405(a), 29 U.S.C. § 1105(a), Against Defendants Fiduciary Review Committee and Alight

75. Plaintiff incorporates Paragraphs 1 through 51 as though fully set forth herein. ERISA Section 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if the fiduciary knows of a breach and fails to remedy it, knowingly participates in a breach, or enables a breach.

76. Defendants Fiduciary Review Committee and Alight enabled the co-fiduciary breaches by failing to monitor and ensure the benefits statements were

accurate and allowed the failure to continue for several years. Defendant Alight knew the Plan provided for quarterly monitoring of its fiduciary duties and knew the Fiduciary Review Committee was not monitoring its services which enabled the Fiduciary Review Committee to breach its fiduciary duties.

77. Defendant Fiduciary Review Committee likewise breached its co-fiduciary duties by failing to monitor the services of Alight which enabled it to breach its fiduciary duties.

78.

79. Plaintiff had been harmed by Defendants' co-fiduciary breaches in that he received and relied on inaccurate information about his retirement income making a decision of whether to accept the severance package and retire.

## SIXTH CLAIM FOR RELIEF

### *In the Alternative to the Second Claim for Relief*

### State Law Claim for Professional Negligence Against Defendant Alight

80. Plaintiff incorporates Paragraphs 1 through 49 as though fully set forth herein.

81. A third-party administrator performing professional services owes a duty of care to the intended beneficiaries of the professional services rendered, including, without limitation, (1) the duty to have that degree of learning and skill ordinarily possessed by a reputable third-party administrator practicing in the same or similar locality under similar circumstances; (2) the duty to use the care and skill ordinarily exercised in like cases by reputable members of the profession practicing in the same or similar locality in similar circumstances; and (3) the duty to use reasonable diligence and his or her best judgment in the exercise of skill and the application of learning. A failure to perform any one of these duties constitutes negligence.

82. A third-party administrator that holds itself out as a specialist in a particular field, such as the calculation of benefits under a pension plan, has the duty (1) to have the knowledge and skill ordinarily possessed, and (2) to use the care and skill ordinarily used, by a reputable specialist practicing in the same field and in the same or similar locality and under similar circumstances. A failure to fulfill either duty constitutes negligence.

83. Thus, a third-party administrator providing services to an employee benefit plan has a duty to exercise such care, skill, and diligence as other members of the profession commonly possess and exercise in the course of the provision of services to or for an employee pension benefit plan.

84. Alight breached its professional duties by providing grossly inaccurate information to Plaintiff regarding the amount of his benefits under the Retirement Plan on numerous occasions and by related acts and omissions.

85. As a consequence of Alight's professional negligence, Plaintiff has been injured in that he relied upon the inaccurate information in planning for his retirement and deciding whether to accept the severance package, and has suffered losses as a result.

## SEVENTH CLAIM FOR RELIEF

### In the Alternative to the Second Claim for Relief

**State Law Claim for Negligent Misrepresentation Against Defendant Alight**

86. Plaintiff incorporates Paragraphs 1 through 49 as though fully set forth herein.

87. Alight misrepresented to Plaintiff the amount of his benefits under the Retirement Plan.

88. Alight had no reasonable grounds for believing that its statements regarding the amount of Plaintiff's Retirement Plan benefits were true.

89. Alight had a duty to Plaintiff to exercise reasonable care in providing them with statements of Retirement Plan benefits.

90. Alight intended that Plaintiff act in reliance on its statements of his Retirement Plan benefit for purposes of financial planning, including because there is no purpose for a Retirement Plan statement other than to assess the value of the benefits thereunder.

91. Plaintiff justifiably relied on Alight's Retirement Plan statements in planning for his retirement and deciding whether to accept the severance package.

92. Plaintiff has been injured as a result of his justifiable reliance on the inaccurate information in planning for retirement and accepting the severance package, and has suffered losses as a result.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the court grant the following relief:

**As to the First Claim for Relief:**

A. Declare that Defendant International Paper, Fiduciary Review Committee and the Retirement Plan Administrator have breached their fiduciary duties to Plaintiff;

B. Order that Defendants International Paper, Fiduciary Review Committee and the Retirement Plan Administrator are estopped to deny that Plaintiff is entitled to benefits under the Retirement Plan consistent with the statements furnished to Plaintiff;

C. Surcharge Defendants International Paper, Fiduciary Review Committee and the Retirement Plan Administrator in the amount necessary to place Plaintiff in the position he would have occupied but for Defendants' breaches;

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g); and

E. Provide such other equitable relief as the Court deems appropriate.

**As to the Second Claim for Relief:**

A. Declare that Defendant Fiduciary Review Committee has breached its fiduciary duties to Plaintiff;

B. Order that Defendant Fiduciary Review Committee is estopped to deny that Plaintiff is entitled to benefits under the Retirement Plan consistent with the statements furnished to Plaintiff;

C. Surcharge Defendant Fiduciary Review Committee in the amount necessary to place Plaintiff in the position he would have occupied but for Defendant's breaches;

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g); and

E. Provide such other equitable relief as the Court deems appropriate

**As to the Third Claim for Relief:**

A. Declare that Defendant Alright has breached its fiduciary duties to Plaintiff;

B. Surcharge Defendant Alight in the amount necessary to place Plaintiff in the position he would have occupied but for Defendant's breaches;

C. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g); and

D. Provide such other equitable relief as the Court deems appropriate.

**As to the Fourth Claim for Relief:**

A. Declare that Defendant Retirement Plan Administrator violated ERISA Section 105, 29 U.S.C. § 1025;

B. Order that Defendant Retirement Plan Administrator is estopped to deny that Plaintiff is entitled to benefits under the Plan consistent with the statements provided to Plaintiff prior to his date of retirement;

C. Pursuant to ERISA Section 502(c), 29 U.S.C. § 502(c), find the Retirement Plan Administrator liable to Plaintiff in the amount of $110 per day from the date of the provision of each inaccurate benefit statement, each of which constitutes a separate failure to meet the requirements of ERISA Section 105(a), 29 U.S.C. § 1025(a);

D. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g); and

E. Provide such other relief as the Court deems equitable and just.

**As to the Fifth Claim for Relief:**

A. Declare that Defendants have breached their co-fiduciary duties to Plaintiff;

B. Surcharge Defendants in the amount necessary to place Plaintiff in the position he would have occupied but for Defendant's breaches; and

Provide such other relief as the Court deems equitable and just.

**As to the Sixth Claim for Relief:**

A. Order that Alight pay Plaintiff damages for the harm he has suffered as a result of Alight's professional negligent; and

B. Provide such other relief as the Court deems equitable and just.

**As to the Seventh Claim for Relief:**

A. Order that Alight pay Plaintiff damages for the harm he has suffered as a result of Alight's negligence misrepresentation; and

B. Provide such other relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to his claims brought under state law.

Respectfully submitted

Dated:  February 6, 2020          KANTOR & KANTOR, LLP

By: */s/ Susan L. Meter*
Elizabeth Hopkins
Susan L. Meter
Attorneys for Plaintiff