Elizabeth Hopkins – CA State Bar No. 324431
  E-mail: ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
  E-Mail: smeter@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile:  (818) 350-6272

Attorneys for  Plaintiff
DONALD A. WALLACE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD A. WALLACE,<br><br>                Plaintiff,<br><br>        vs.<br><br>INTERNATIONAL PAPER COMPANY, A New York Corporation; FIDUCIARY REVIEW COMMITTEE Of The RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY; PLAN ADMINISTRATOR Of The RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY; And ALIGHT SOLUTIONS LLC (Formerly Known As Hewitt Associates LLC),<br><br>                Defendants. | Case No. 8:20-cv-00242-JVS-DFM<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO INTERNATIONAL PAPER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [DKT. NO. 30]**<br><br>Date:        June 29, 2020<br>Time:        1:30 p.m.<br>Ctrm:        Santa Ana #10C<br>Judge:      Hon. James V. Selna<br><br>Complaint Filed: February 6, 2020<br><br>Trial Date: None Set |

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

THE STANDARD OF REVIEW FOR A MOTION TO DISMISS ....................... 5

ARGUMENT .............................................................................................................. 7

    I.    PLAINTIFF HAS STANDING TO SUE ................................................. 9

    II.   PLAINTIFF HAS STATED A CLAIM FOR FIDUCIARY
         BREACH AGAINST EACH OF THE IP DEFENDANTS ............... 10

         A.    The Complaint Plausibly Alleges That IP is a Plan
              Fiduciary ........................................................................... 11

         B.    The Complaint Sufficiently Alleges Defendants
              Committed Fiduciary Breaches in Misrepresenting
              Plaintiff's Benefits ........................................................... 12

         C.    The Complaint Sufficiently Alleges Breaches of Fiduciary
              Duties  Based on the Committee's Failure to Monitor
              Alight ................................................................................. 15

    III.   PLAINTIFF HAS STATED A CLAIM AGAINST THE PLAN
         ADMINISTRATOR FOR FAILURE TO PROVIDE PENSION
         BENEFIT STATEMENTS ........................................................... 16

    IV.   PLAINTIFF DOES NOT ASSERT A DISGUISED BENEFIT
         CLAIM, NOR IS HIS CLAIM PRECLUDED BY ERISA
         SECTION 409 ................................................................................ 19

    V.    PLAINTIFF HAS PROPERLY REQUESTED EQUITABLE
         ESTOPPEL AS APPROPRIATE EQUITABLE RELIEF TO
         REMEDY DEFENDANTS' FIDUCIARY BREACHES ................. 21

    VI.   PLAINTIFF MAY SEEK SURCHARGE ........................................... 24

    VII.  ALTERNATIVELY, LEAVE TO AMEND SHOULD BE
         GRANTED .................................................................................... 25

CONCLUSION........................................................................................................... 25

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Plaintiff's Memorandum Of Points And Authorities In Opposition To International
Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................6

*Bafford v. Northrop Grumman Corp.,*
    2020 WL 70834 (C.D. Ca. Jan. 7, 2020) ........................................13, 15

*Barker v. Am. Mobil Power Corp.,*
    64 F.3d 1397 (9th Cir. 1995) .......................................................18

*Batchelor v. Oak Hill Med. Group,*
    870 F.2d 1446 (9th Cir.1989) ......................................................15

*Bd. of Trustees of S. California IBEW-NECA Defined contribution Plan v. N.Y.*
    *Mellon Corp.,*
    No. 09 CIV 6273 RMB, 2011 WL 6130831 (S.D.N.Y. Dec. 9, 2011) ..................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................6

*Bell v. Hood,*
    327 U.S. 678 (1946)..........................................................................6

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) .......................................................15

*Brandon v. Health Net Health Plan of Oregon, Inc.,*
    2019 WL 5712730 (D. Ore. 2019)..................................................8

*Burke v. Lash Work Environments Inc.,*
    408 Fed. Appx. 438 (2d Cir. 2011)................................................9

*Christensen v. Qwest Pension Plan,*
    462 F.3d 913 (8th Cir. 2006) .......................................................19

*Cigna Corp. v. Amara,*
    563 U.S. 421 (2011)..................................................................passim

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009) .....................................................7

*Curtiss-Wright Corp. v. Schoonejongen,*
    514 U.S. 73 (1995)........................................................................11

*Donovan v. Bierwirth,*
    680 F.2d 263 (2d Cir. 1982) .........................................................7

*Erickson v. Pardus,*
    551 U.S. 89 (2007)......................................................................16

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

ii

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014).............................................................................9

*Gabriel v. Alaska Elec. Pension Fund*,
    773 F.3d 945 (9th Cir. 2014) ...............................................22, 23, 24

*Greany v. Western Farm Bureau Life Ins. Co.*,
    973 F.2d 812 (9th Cir. 1992) ...........................................................22

*Gurasich v. IBM Ret. Plan*,
    2014 WL 5454525 (N.D. Ca. Oct. 27, 2014) ................................20, 21

*Howard v. Shay*,
    100 F.3d 1484 (9th Cir. 1996) ...........................................................7

*In re Calpine Corp.*,
    2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ...................................15

*In re Computer Scis. Corp. ERISA Litig.*,
    635 F. Supp. 2d 1128 (C.D. Cal. 2009) ............................................15

*In re DeRogatis*,
    904 F.3d 174 (2d Cir. 2018)........................................................12, 14

*In re Enron Corp. Securities, Derivative & ERISA Litig.*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003)..............................................11

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) .......................................................8, 15

*King v. Blue Cross & Blue Shield of Ill.*,
    871 F.3d 730 (9th Cir. 2017) .......................................................11, 12

*Knappenberger v. City of Phoenix*,
    566 F.3d 936 (9th Cir. 2009) ...........................................................25

*Lebahn v. Nat'l Farmers Union Unif. Pension Plan*,
    828 F.3d 1180 (10th Cir. 2016) ........................................................13

*Livick v. Gillette Co.*,
    524 F.3d 24 (1st Cir. 2008).............................................................13

*Lockheed v. Spink*,
    517 U.S. 882 (1996)........................................................................7, 11

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (en banc..........................................25

*Lorenz v. Safeway, Inc.*,
    231 F. Supp. 3d 1005 (N.D. Ca. 2017) .............................................8

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Plaintiff's Memorandum Of Points And Authorities In Opposition To International
Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

*Marder v. Lopez,*
   450 F.3d 445 (9th Cir. 2006) ...........................................................7, 9, 10

*Mass. Mut. Life Ins. Co. v. Russell,*
   473 U.S. 134 ...........................................................................................7, 21

*Mertens v. Hewitt Assocs.,*
   508 U.S. 248 (1993)........................................................................................23

*Moyle v. Liberty Mut. Ret. Ben. Plan,*
   823 F.3d 948 (9th Cir. 2016) .........................................................................20

*Nachman Corp. v. Pension Benefit Guaranty Corp.,*
   446 U.S. 359 (1980).........................................................................................7

*Pisciotta v. Teledyne Industries, Inc.,*
   91 F.3d 1326 (9th Cir. 1996)..........................................................................21

*Quan v. Computer Scis. Corp.,*
   623 F.3d 870 (9th Cir. 2010) .........................................................................15

*Rosenburg v. Int'l Bus. Machines Corp.,*
   2006 WL 1627108 (N.D. Cal. June 12, 2006).................................................8

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) .....................................................................5, 6

*Schonbak v. Minn. Life,*
   2016 WL 9525592 (S.D. Cal. Sept. 30, 2016)................................................8

*Solis v. Webb,*
   931 F. Supp. 2d 936 (N.D. Cal. 2012) ..........................................................15

*Spink v. Lockheed Corp.,*
   125 F.3d 1257 (9th Cir. 1997) .......................................................................22

*Teixiera v. County of Alameda,*
   873 F.3d 670, 678 (9th Cir. 2017) ..................................................................6

*Tussey v. ABB, Inc.,*
   746 F.3d 327 (8th Cir. 2014) ...........................................................................8

*U.S. Airways v. McCutchen,*
   569 U.S. 88 (2013)..........................................................................................23

*United States ex rel. Stein v. Anixter International Inc.,*
   No. 1:13CV110, 2015 WL 7592744, at *2 (S.D. Miss. Nov. 25, 2015) ..............10

*Unum Life Ins. Co. of Am. v. Ward,*
   526 U.S. 328 (1999).........................................................................................24

*Varity v. Howe,*
   516 U.S. 489 (1996)..................................................................................12, 20

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Plaintiff's Memorandum Of Points And Authorities In Opposition To International
Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

*Volis v. Kingsbury Condominiums Owners Ass'n*,
 2015 WL 12655657 (C.D. Ca. Oct. 20, 2015)......................................6

*Wallack v. Idexx Laboratories, Inc.*,
 No. 11cv2996, 2016 WL 3074388 (S.D. Ca. June 1, 2016)..................10

*White v. Chevron Corp.*,
 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................................16

*Wilson v. Bank of Am. Pension Plan for Legacy Cos.*,
 2019 WL 2549044 (N.D. Ca. June 20, 2019) ..................................17

*Wolfe v. Strankman*,
 392 F.3d 358 (9th Cir. 2004) .....................................................6

## FEDERAL STATUTES

29 U.S.C. § 1001(a) ..................................................................16

29 U.S.C. § 1001(b) ...............................................................7, 16

29 U.S.C. § 1002(21)(a) ............................................................11

29 U.S.C. §§ 1002(23)(A), 1054(c)(3) ...........................................18

29 U.S.C. §§ 1021-30 ................................................................16

29 U.S.C. § 1025(a)(1)(B)(i), (3)(A) .............................................17

29 U.S.C. § 1025(a)(1)(B)(i), (ii) .................................................17

29 U.S.C. § 1025(a)(2) ..............................................................17

29 U.S.C. § 1025(a)(2)(i)(I) ........................................................18

29 U.S.C. § 1025(a)(3)(A) ..........................................................17

29 U.S.C. § 1104(a) ..................................................7 ,10, 11, 18

29 U.S.C. §§ 1104(a)(1)(A), (B), (D) ..............................................8

29 U.S.C. § 1104(a)(1)(D) ..........................................................24

29 U.S.C. § 1105(a)(2) ..............................................................13

29 U.S.C. § 1105(c)(2) ..............................................................14

29 U.S.C. § 1109 .....................................................................21

29 U.S.C. § 1110 .....................................................................14

29 U.S.C. § 1132(a)(2) ..............................................................21

29 U.S.C. § 1132(a)(3) ................................................................8

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## FEDERAL RULES

Federal Rules of Civil Procedure, Rule 8 ................................................16

Federal Rule of Civil Procedure, Rule 12(b)(1) ..........................5, 9, 10

Federal Rules of Civil Procedure, Rule 12(b)(6)..............................6,7

## OTHER AUTHORITIES

Hacker, *Merriam-Webster.com*, 2020, https://www.merriam-webster.com. ....18

J. Eaton, Handbook of Equity Jurisprudence § 62, p. 150 (1923) ..........................22

3 S. Symons, Pomeroy's Equity Jurisprudence § 805, pp. 191-92 (5th ed.1941) ....22

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Plaintiff's Memorandum Of Points And Authorities In Opposition To International
Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

After many years of service for International Paper ("IP"), and companies which it acquired through a number of corporate transactions, Plaintiff earned the right to a pension benefit under the Retirement Plan of International Paper ("Plan"). Complaint (Dkt. 1) ¶¶ 16-20. While Plaintiff was still employed by IP, and before he had any plan to retire, he was offered a severance package by IP. In deciding whether he could financially afford to accept this offer, Plaintiff planned carefully with the help of a financial consultant. Complaint ¶ 24. A material component to accepting it was the amount of his monthly pension benefit, as Plaintiff discussed with officials at IP. Complaint ¶¶ 26-31. Plaintiff received and relied on pension benefit statements in making a life-time decision to accept a severance offer and retire earlier than he had planned.[1] Complaint ¶¶ 25, 28-31. Plaintiff was economically harmed when, less than a year after accepting the offered severance package and retiring, and only three months after his pension payments commenced, he learned that his benefits were suddenly being reduced by $4,648 per month because of an "audit" that revealed that the benefit statements given to Plaintiff over many years, and upon which Mr. Wallace relied in deciding to retire, were incorrect. Complaint ¶ 44.

Defendants IP, Fiduciary Review Committee of the Retirement Plan of International Paper Company, and the Plan Administrator of the Retirement Plan of International Paper Company ("Plan"), (collectively "IP Defendants") filed this Motion to Dismiss and Memorandum in Support [Dkt. Nos. 30, 31] ("Motion") on the theories that: (1) Plaintiff lacks standing to sue based on the terms of his severance agreement; (2) Plaintiff has failed to allege actionable fiduciary breach claims against each of the IP Defendants; (3) Plaintiff has failed to allege a claim against the Plan

---

[1] In addition, a material component of the severance agreement for International Paper was Plaintiff agreeing he would never again seek employment or be employed by International Paper, thereby precluding Plaintiff from reemployment for purposes of accruing additional benefits to make up for the loss caused by the misrepresentations about the amount of his benefit.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Administrator under ERISA Section 105(a); (4) Plaintiff's fiduciary breach claims are disguised benefit claims that impermissibly seek individual relief; (5) Plaintiff has failed to state a claim for Estoppel; and (6) Plaintiff has failed to state a claim for surcharge. Because, as explained below, Defendants are wrong with respect to each of these arguments, this Court should deny the Motion in its entirety. In the alternative, should this Court grant any part of this Motion, Plaintiff requests that the Court grant him leave to amend.

## STATEMENT OF FACTS

Plaintiff Donald Wallace's employment with IP-acquired companies began in 1981, when he began work for Crown Zellerbach, a company that was acquired by Gaylord Container Company on November 17, 1986. Complaint ¶¶ 16, 17. Mr. Wallace continued to work for Gaylord Container Company until January 13, 1988. Complaint ¶ 17. On February 28, 2002, Gaylord Container Company was acquired by Temple-Inland, Inc, Complaint ¶ 19, which was later acquired by IP.

On April 2, 1991, Mr. Wallace began working for Weyerhaeuser Corporation. Complaint ¶ 18. On August 4, 2008, a portion of Weyerhaeuser Corporation, including the division for which Mr. Wallace worked, was purchased by International Paper. Complaint ¶ 20. Accordingly, on that date, Mr. Wallace became an employee of International Paper. Complaint ¶ 20.

Due to the acquisitions, Mr. Wallace was a participant in two components of the Retirement Plan – the Temple-Inland Retirement Plan and the Restoration Plan of International Paper – both of which provide retirement benefits under the umbrella of the Retirement Plan. Complaint ¶ 21. However, given the complexities of the acquisitions, his employment history, and the possibly multiple governing Plan documents, determining his years of service for purposes of calculating his pension was no easy task. For this reason, throughout his years while working for IP, Mr. Wallace frequently reviewed his pension benefit through an online portal, reviewing it often enough to have saved it as a favorite on his internet browser. Complaint ¶ 22.

2

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Likewise, Mr. Wallace reviewed and relied up annual pension benefit statements which he requested and received. Complaint ¶ 23.

Mr. Wallace also employed a financial advisor from Edward Jones who provided an overall retirement income plan for Mr. Wallace each year, based in large part on the amount of his Retirement Plan benefit as reported by International Paper and by Alight (Hewitt). Complaint ¶ 24. Mr. Wallace received and reviewed a pension benefits statement for the year ending December 31, 2015, which showed that, based on his years of service and compensation, Mr. Wallace's monthly retirement benefit was $7,342.88 a month for a single life annuity (meaning that only he would receive lifetime benefits and not his spouse upon his death). Complaint ¶ 25.

He had no intention of retiring at that time. Complaint ¶ 26. However, on December 15, 2016, Mr. Wallace was approached by Gary Gavin, Regional Vice President of International Paper, who offered Mr. Wallace a severance package. Complaint ¶ 26. Mr. Wallace told Mr. Gavin that he would consider the severance package but that he needed to look into his Retirement Plan benefits before making any decision. Complaint ¶ 27. Mr. Gavin informed Mr. Wallace that he needed to make a decision about the severance package offer before the end of December 2016. Complaint ¶ 27.

Given this short deadline, Mr. Wallace had a conversation the next day, December 16, 2016, with Alan Carpenter, an IP official, who explained the details of the severance. Complaint ¶ 28. Mr. Wallace discussed his Retirement Plan with Mr. Carpenter and that he had a statement from the prior year and asked how he could get an estimate for 2016. Complaint ¶ 28. Mr. Carpenter told Mr. Wallace that if he went online, he could request an estimate but that they would use salary from 2015 because the 2016 salary was not yet reported. Complaint ¶ 28. Mr. Carpenter told Mr. Wallace that the pension would only go up for 2016 from what was reported as his benefit on his 2015 statement from the company. Complaint ¶ 28.

3

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Based on Mr. Wallace's conversations with Mr. Gavin and Mr. Carpenter, both knew that the amount of Mr. Wallace's monthly pension benefit was of critical importance to Mr. Wallace's determination whether to accept the severance package and retire from IP. Complaint ¶ 29. It was imperative to Mr. Wallace that he have sufficient retirement income to continue to live comfortably in California in his retirement. Complaint ¶ 30. Secure in the knowledge that he would have sufficient income for a comfortable retirement, Mr. Wallace accepted the severance package on December 29, 2016, and agreed to retire from IP on April 3, 2017, although he had reservations about leaving International Paper. Complaint ¶¶ 31, 32. Or so he thought.

In January 2017, prior to his retirement date, Mr. Wallace requested and received an updated Retirement Plan benefit statement on International Paper letterhead for both the Temple-Inland Salaried portion and Restoration Plan portion of the Retirement Plan. Complaint ¶ 34. This statement, which was in line with the 2015 statement and earlier statements, showed Mr. Wallace's monthly pension benefit for a benefit commencing May 1, 2017, would be $2,652.39 for International Paper Salaried Plan, and $5,927.61 for Temple-Inland Salaried Plan, for a total monthly pension benefit of $8,580 (as a single life annuity). Complaint ¶ 35.

Mr. Wallace terminated his long-term employment with IP on April 3, 2107, Complaint ¶ 37, but did not opt to receive his pension benefits until many months later. Thus, in November 2017, Mr. Wallace requested information about commencing his Retirement Plan benefits in January 2018, and received in response a package of information that included a Retirement Plan benefits statement showing a monthly benefit of $9,312.93 as a single life annuity. Complaint ¶ 38. Mr. Wallace promptly completed the retirement application, choosing a 100% joint and survivor annuity benefit, meaning that is wife would receive a monthly benefit after his death if he were to predecease her, which reduced his monthly benefit amount from $9,312.93 to $7,448.03. Complaint ¶ 39.

4

Plaintiff's Memorandum Of Points And Authorities In Opposition To International
Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

On December 1, 2017, Mr. Wallace received a package entitled "Pension Election Confirmation Statement – Retirement Plan of International Paper," which confirmed that he would receive a monthly joint and survivor annuity benefit of $7,448.03 per month. Complaint ¶ 40. He and his wife signed and notarized the forms and returned them pursuant to the stated instructions. Complaint ¶ 40. On December 13, 2017, Mr. Wallace received confirmation that his Retirement Plan benefit had been authorized to commence with the first monthly payment to begin on January 1, 2018. Complaint ¶ 41.

Consistent with the statements and retirement application, Mr. Wallace received his first Retirement Plan check on January 31, 2018, in the amount of $7,448.03. Complaint ¶ 42. All continued to be well through the end of February, when Mr. Wallace received his second Retirement Plan check in the amount of $7,448.03. Complaint ¶ 43.

However, on March 14, 2018, Mr. Wallace received a phone call from the employee service center stating that, because of "an audit," the company was drastically reducing his monthly benefits payment to $2,800. Complaint ¶ 44. On March 19, 2018, Mr. Wallace spoke to Dave at the employee service center who told Mr. Wallace that he could not provide an explanation of why his benefit had been reduced but that he would send him an appeal form and that he could complete the form and mail it to Claim and Appeal Management. Complaint ¶ 45. Mr. Wallace appealed the reduction of his retirement benefit to the Retirement Plan claims administrator, which denied his appeal and upheld the reduction of benefits on December 31, 2018. Complaint ¶ 46. This suit followed.

## THE STANDARD OF REVIEW FOR A MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed based on either a "facial or factual" challenge to subject matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are

insufficient on their face to invoke federal jurisdiction." *Safe Air,* 373 F.3d at 1039. In resolving a facial attack, the court must "assume [Plaintiff's] allegations to be true and draw all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction, and the court "need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. In either case, "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional," and are only warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (quoting *Bell v. Hood,* 327 U.S. 678, 682-83 (1946)). Furthermore, "[w]here the issue goes to the merits rather than the court's subject matter jurisdiction, the proper motion is not a Rule 12(b)(1) motion but rather a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 775 (9th Cir. 2009) (finding that whether defendant was an "employer" within the meaning of ERISA was a question on the merits of the claim, and not an issue of subject-matter jurisdiction, and holding that district court correctly analyzed the issue under Rule 12(b)(6) rather than Rule 12(b)(1))." *Volis v. Kingsbury Condominiums Owners Ass'n*, 2015 WL 12655657, at *1 (C.D. Ca. Oct. 20, 2015)

To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when there are enough factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court assumes the facts asserted in the complaint to be true. *Teixiera v. County of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). Moreover, the court must view the asserted facts in the light

6

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

On a Motion to Dismiss under 12(b)(6), the court generally considers only the contents of the complaint. However, a court may consider material outside the compliant "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claims; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted).

## ARGUMENT

ERISA is a remedial statute designed to "protect . . . the interests of participants in employee benefit plans and their beneficiaries," by requiring "disclosure and reporting" of plan information to participants and beneficiaries and setting forth "standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanction, and ready access to Federal courts." 29 U.S.C. § 1001(b). In enacting ERISA, Congress sought "to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Lockheed v. Spink*, 517 U.S. 882, 887 (1996) (citing *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375 (1980)). To this end, among other duties, ERISA imposes fiduciary standards on those managing and administering plans, drawn from the law of trusts, that are the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). See also *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n. 8 (1985) (ERISA was enacted to "establish judicially enforceable standards to ensure honest, faithful and competent management of pension and welfare funds").

Thus, ERISA Section 404 mandates that plan fiduciaries operate the plan prudently and in the sole interests of the plan participants and beneficiaries, for the exclusive purpose of providing benefits to the participants and beneficiaries and

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

defraying reasonable plan expenses, and in accordance with plan terms, but only to the extent that the terms do not otherwise conflict with ERISA. 29 U.S.C. §§ 1104(a)(1)(A), (B), (D). And ERISA allows plan participants and beneficiaries to sue fiduciaries who do not live up to these exacting fiduciary standards or who otherwise violate ERISA or the terms of their plan to obtain injunctive or "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3), which the Supreme Court has held encompasses a broad range of equitable remedies for fiduciary misconduct, including equitable estoppel and make-whole monetary relief or "surcharge" for "any violation of a duty imposed upon that fiduciary." *Cigna Corp. v. Amara*, 563 U.S. 421, 442 (2011).

Moreover, the Ninth Circuit "construe[s] ERISA fiduciary status liberally, consistent with ERISA's policies and objectives" as a remedial statute. *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009). The question whether conduct was fiduciary in nature "require[s] a searching inquiry into the facts and is therefore inappropriate for resolution on a motion to dismiss." *Rosenburg v. Int'l Bus. Machines Corp.*, 2006 WL 1627108, at *5 (N.D. Cal. June 12, 2006) (declining to decide at pleadings stage whether employer acted as fiduciary in allegedly failing to credit compensation under plan); accord *Schonbak v. Minn. Life*, 2016 WL 9525592, at *4 (S.D. Cal. Sept. 30, 2016) (declining to decide at pleadings stage whether employer acted as fiduciary in misrepresenting plaintiff's coverage and benefits under plan). *See also Brandon v. Health Net Health Plan of Oregon, Inc*.**,** 2019 WL 5712730 *2 (D. Ore. 2019).

In addition, because an ERISA fiduciary breach claims are "'fact intensive'" and require "the application of a reasonableness standard, '[r]arely will such a determination be appropriate on a motion for summary judgment,' let alone a motion to dismiss." *Lorenz v. Safeway, Inc.*, 231 F. Supp. 3d 1005, 1020 (N.D. Ca. 2017) (quoting *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014), and *Bd. of Trustees of S. California IBEW-NECA Defined contribution Plan v. N.Y. Mellon Corp.*, No. 09

CIV 6273 RMB, 2011 WL 6130831, at *3 (S.D.N.Y. Dec. 9, 2011)). Thus, when a complaint alleges violations of ERISA's fiduciary duties, a trial court must engage in "careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

In light of these standards, and as discussed in further detail below, Plaintiff has adequately alleged fiduciary status and breaches with respect to each of the IP Defendants on each Count. Plaintiff also incorporates by reference the arguments made in Plaintiff's Opposition to Alight's Motion to Dismiss, filed simultaneously.

## I.    PLAINTIFF HAS STANDING TO SUE

Relying on language in the severance agreement that Mr. Wallace signed in April 2017, the IP Defendants argue that Mr. Wallace lacks standing to sue them under ERISA. Dkt. 31, at 11-12. This is not the case for several reasons.

First, the severance agreement on which defendants rely does not meet the requirements for extrinsic materials that a court may consider because, although the complaint refers to the severance agreement, it does not "necessarily" rely on the existence or contents of the agreement, nor is the agreement itself relevant much less central to Mr. Wallace's fiduciary breach claims. *Marder*, 450 F.3d at 448. Instead, Mr. Wallace argues that the fiduciary breaches of the Defendants in repeatedly and egregiously misstating his pension benefits harmed him by inducing him to accept the severance offer and retire early. Nothing in the severance agreement itself is in any way material or even relevant to these claims. Therefore, the IP Defendants improperly rely upon it in support of their motion to dismiss under Rule 12(b)(1). *Id.*

Second, a defendant may assert a written release of claims as a general defense to defeat a claim, but the existence of a release is not a jurisdictional bar to bringing such claims. *E.g.*, *Burke v. Lash Work Environments Inc.*, 408 Fed. Appx. 438, 439 (2d Cir. 2011) (whether or not a settlement agreement and release extinguished ERISA liability the release did not extinguish liability for purposes of a 12(b)(1)

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

motion); *United States ex rel. Stein v. Anixter International Inc.*, No. 1:13CV110, 2015 WL 7582744, at *2 (S.D. Miss. Nov. 25, 2015) (pre-litigation release of claims may bar subsequent action on the merits, but it does not destroy standing). Thus, the existence of a release in the severance agreement does not justify consideration of material beyond the complaint, nor does it support dismissal under Federal Rule of Civil Procedure 12(b)(1).

More importantly, a release will only bar claims "covered by the release's terms, provided the release has not been obtained by fraud, deception, misrepresentation, duress, or undue influence." *Marder*, 450 F.3d at 448. Indeed, in the context of asserted fiduciary breach claims "a release can be voided if," among other reasons, it is "obtained by a fiduciary without full disclosure of the relevant facts." *Wallack v. Idexx Laboratories, Inc.*, No. 11cv2996, 2016 WL 3074388, at *6 (S.D. Ca. June 1, 2016) (citation omitted). Here, the heart of Mr. Wallace's case is that fiduciary breaches in misrepresenting his pension benefits induced him to accept the severance package being offered by IP, and that he would not have agreed to retire under the severance agreement has he been given the relevant facts about the actual amount of pension benefits he would receive. Complaint ¶¶ 29, 30, 47. Whether that is correct must be decided after development of the record and not upon a motion to dismiss on the pleadings.

## II. PLAINTIFF HAS STATED A CLAIM FOR FIDUCIARY BREACH AGAINST EACH OF THE IP DEFENDANTS

Plaintiff's first and second claims for relief plausibly allege that the IP Defendants breached the fiduciary duties imposed on them by ERISA Section 404(a), 29 U.S.C. § 1104(a). Complaint ¶¶ 50-61.[2] Under Section 404(a), "[a] fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance . . . . Fiduciaries breach their duties if they mislead plan

---

[2] We separately discuss the fourth claim for failure to provide pension benefit statements in Section III below.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

participants or misrepresent the terms or administration of a plan." *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 744 (9th Cir. 2017) (citations, quotation marks, and alteration marks omitted). By repeatedly and egregiously supplying Mr. Wallace with inaccurate information about the pension benefit to which he was entitled, including in pension benefit statements, and by failing to monitor the other fiduciaries in this regard and correct any misstatements, the Complaint plausibly states a claim that the each of the IP Defendants breached their duties under Section 404(a).

A.    The Complaint Plausibly Alleges That IP is a Plan Fiduciary

IP contends that it is not a fiduciary and it should therefore be dismissed as a defendant. Dkt. 31, at 12-14. It is of course true, as IP argues, that a company that sponsors a plan does not act as a fiduciary under ERISA in adopting or amending the plan. Dkt. 31, at 14 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (1996)). However, an employer does act as a fiduciary when it engages in fiduciary functions with respect to plan management and administration, such as making required disclosures, and when it appoints other fiduciaries to do so. See 29 U.S.C. § 1002(21)(a) (defining "fiduciary" as encompassing anyone who engages in such activities). When engaging in such actions, plan fiduciaries must act with the utmost care and loyalty under ERISA Section 404.

The Complaint alleges that IP had the authority to appoint and monitor the Plan Administrator and other fiduciaries. The Plan document, as IP points out, provides that the Committee is directly responsible for appointing the Administrator. Dkt. 31, Ex. 4, p.65. But that same document makes IP responsible, through its Board of Directors, for appointing the members of the Committee. Ex 4, p. 80 of 101, Section 12.01. See *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 6660 (S.D. Tex. 2003) ("a corporation acts through its board of directors to effectuate its corporate duties") (citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 80-81 (1995)). The extent to which IP also appointed or oversaw the appointment of the other plan fiduciaries is unclear at this early stage, but given the

Ninth Circuit's liberal construction of fiduciary status, the facts alleged allege support a reasonable inference that IP acted as an appointing and monitoring the Committee fiduciaries and had fiduciary duties with respect to this role as we discuss in Part C. below.

### B. The Complaint Sufficiently Alleges Defendants Committed Fiduciary Breaches in Misrepresenting Plaintiff's Benefits

The other IP Defendants do not disagree that they are ERISA fiduciaries, but they contend that the Complaint does not adequately allege that they or indeed any of the fiduciaries breached any of their duties with respect to Mr. Wallace. Defendants are mistaken.

The IP Defendants argue, as do the Alight Defendants, that preparing benefit statements for a plan participant is not a fiduciary act. This makes scant sense given the centrality placed by ERISA on participants' receipt of plan and benefit information. *King*, 871 F.3d at 740. Indeed, it is quite clear that individuals and entities act as fiduciaries when they provide information to "permit[] beneficiaries to make an informed choice about continued participation" in a plan or "answer[] beneficiaries' questions about the meaning of the terms of a plan so that those beneficiaries can more easily obtain the plan's benefits." *Varity v. Howe*, 516 U.S. 489, 502-03 (1996); accord, *In re DeRogatis*, 904 F.3d 174, 192 (2d Cir. 2018) (providing information about benefits is a fiduciary function "whether that information concerns the benefits currently available under the plan, or the ongoing integrity of the plan itself").

The recent *King* decision illustrates this point. There, the Ninth Circuit held that the district court erred in granting summary judgment to a plan administrator that supplied a summary plan description that did not comply with the relevant statutory and regulatory requirements. *King*, 871 F.3d at 745. The court likewise held that, because the claims administrator acted as a fiduciary in deciding claims, it was a fiduciary with respect to participant communications as well. *Id.* at 746-47.

12

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

The cases cited by Defendants suggesting that an individual or entity that does nothing more than perform pension calculations does not thereby become a fiduciary are wholly inapplicable to the Committee, as the Plan Administrator and named fiduciary. Dkt. 31, at 16.[3] The district court's decision in *Bafford v. Northrop Grumman Corp.*, 2020 WL 70834 (C.D. Ca. Jan. 7, 2020), is the exception since it is on point factually.[4] However, that case was incorrectly decided, for the reasons discussed herein, and is on appeal to the Ninth Circuit, where briefing is currently underway.

Moreover, each of the IP Defendants is plausibly alleged to have acted in violation of their own duties, and to be liable for the violations of their co-fiduciaries under ERISA Section 405, see Complaint ¶¶ 75-77, which among other things makes fiduciaries liable for the breaches of other fiduciaries if they have enabled those breaches. 29 U.S.C. § 1105(a)(2). Among other things, the Complaint supports that the failure to monitor Alight's provision of pension benefits statements by the Administrator and Committee Defendants enabled Alight's extremely poor performance. Moreover, IP, as an appointing fiduciary, is liable not just for its failure to monitor its appointees, but also, as a fiduciary, for its failure to give Mr. Wallace the accurate information about his pension when he specifically inquired about this, stressing that he needed this information to protect his interest in assessing the

---

[3] In *Lebahn v. Nat'l Farmers Union Unif. Pension Plan*, 828 F.3d 1180 (10th Cir. 2016), the court held that a plan consultant who allegedly had no authority or responsibility other than calculating and communicating pension benefits did not become a fiduciary by exercising that sole function. *Id.* at 1187. Similarly, in *Livick v. Gillette Co.*, 524 F.3d 24, 29-30 (1st Cir. 2008), the court held that a company employee who was not a named fiduciary did not become a fiduciary by virtue of preparing what the complaint referred to as an "estimate of benefits," not a benefit statement, where neither the participant nor the company was relying upon it for retirement or other plan related purposes. By contrast, Alight was hired as a professional third-party administrator and delegated the Administrator's duty to prepare benefit statements for Plan participants, on which the Plaintiffs relied for retirement purposes. Thus, both *Lebahn* and *Livick* are inapplicable with respect to the fiduciary responsibilities of a named fiduciary with plenary authority for Plan administration.

[4] Counsel for Mr. Wallace are also counsel for the plaintiffs in *Bafford*.

13

Plaintiff's Memorandum Of Points And Authorities In Opposition To International Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

company's retirement offer.  Complaint ¶¶ 27-29.  See *In re DeRogatis*, 904 F.3d at 192 (stressing the duty to disclose needed information to plan participants).

Defendants make three additional arguments that can be quickly disposed of. First, the IP Defendants argue that they cannot be held responsible as fiduciaries for any errors in Alight's preparation of Plaintiff's benefit statements.  They rely on ERISA's co-fiduciary provision, which provides, in part, that where the Plan provides a procedure for a named fiduciary to delegate any fiduciary duties to another non-named fiduciary, and that procedure is followed, the named fiduciary's liability is then limited to appointment and monitoring duties.  29 U.S.C. § 1105(c)(2).  The problem for Defendants with this argument is that it is not known, at this stage, whether a proper procedure was followed, and, even more to the point, all of the Defendants deny Alight acted as a fiduciary.

Second, Defendants point to Plan provisions that purport to relieve them of any liability for wrongdoing by any other persons, including the Trustees and other fiduciaries.  Dkt. 31, at 17-18 (citing Ex. 4, p. 67.  The problem with this argument is that ERISA contains an anti-exculpatory provision that invalidates such self-serving agreements.  29 U.S.C. § 1110 (providing, as relevant, that "any provision in an agreement or instrument that purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty under this part shall be void as against public policy").

Third, Defendants point to other self-serving language in the benefit statements, which refer to the statements as "estimates" subject to correction.  Dkt. 19-20 (citing Exhibit 5).  The problem with this argument is that fiduciary breach claims naturally focus on conduct of fiduciaries in carrying out their obligations with sufficient care and loyalty and not on whether plan participants should have relied on them to do so. Furthermore, any questions of reliance goes to remedy, which should not provide a basis for dismissal.  This is particularly true because the Supreme Court has held that a

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

plan participant need not prove detrimental reliance in order to obtain a surcharge remedy, relief that Plaintiff seeks. *Amara,* 563 U.S. 421, 444.

C. The Complaint Sufficiently Alleges Breaches of Fiduciary Duties Based on the Committee's Failure to Monitor Alight

The Complaint plausibly alleges that the Committee, as the entity empowered to appoint and remove the Plan Administrator as well as other fiduciaries, was itself a plan fiduciary. The authority to appoint and remove a fiduciary entails acting as a fiduciary with respect to the appointment. *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir.2009); *Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1448–49 (9th Cir.1989). "Implicit within the duty to select and retain fiduciaries is a duty to monitor their performance." *Solis v. Webb*, 931 F. Supp. 2d 936, 953 (N.D. Cal. 2012). In fact, the duty was more than implicit here, it was explicit given the express language in the Plan document requiring the Committee to monitor plan administration on at least a quarterly basis. Complaint ¶ 13.

Given both this implicit and express duty, the facts alleged in the Complaint support a reasonable inference that the Committee failed to adequately monitor the Alight. The Plaintiffs allege repeated and protracted errors in calculating Mr. Wallace's benefits, errors that could not have slipped below the radar of adequate and quarterly monitoring. Notwithstanding the district court's decision in *Bafford*, nothing more is or could reasonably be required to state a claim given that more specific information about monitoring is uniquely within the control of the Defendants. See Dkt. 31, at 21 (also citing *In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1144 (C.D. Cal. 2009), aff'd sub nom. *Quan v. Computer Scis. Corp.*, 623 F.3d 870 (9th Cir. 2010); *In re Calpine Corp.*, 2005 WL 1431506, *6 (N.D. Cal. Mar. 31, 2005)).

"No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Given their lack of access, plan participants are not required to plead facts directly addressing the process by which a plan was managed, so long as it is reasonable to infer from the facts alleged that the process was flawed. *Id.* at 596. Rule 8 of the Federal Rules of Civil Procedure does not, after all, "require a plaintiff to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful." *Id.* at 595 (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam)). Although the Defendants cite the district court decision in *White v. Chevron Corp.*, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016), as supporting their contention that ERISA plaintiffs must plead specific facts demonstrating a failure to monitor, Dkt. 31, at 21, in fact *White* recognized that it is enough if a plaintiff "plead facts that give rise to a "reasonable inference" that the defendant committed the alleged violation. *Id.* at *19. Plaintiff has done so here.

### III. PLAINTIFF HAS STATED A CLAIM AGAINST THE PLAN ADMINISTRATOR FOR FAILURE TO PROVIDE PENSION BENEFIT STATEMENTS

In addition to stressing the centrality of fiduciary standards to protecting plans and their participants, Congress also found "that owing to the lack of employee information and adequate safeguards concerning [employee benefit plans'] operation, it is desirable in the interests of employees . . . that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans." 29 U.S.C.§ 1001(a). Therefore, Congress listed, among ERISA's central policy goals the requirement for "disclosure and reporting to participants and beneficiaries of financial and other information with respect" to their plans. 29 U.S.C. § 1001(b). Indeed, Title I of ERISA, "Protection of Employee Benefit Rights," begins with Part 1, "Reporting and Disclosure." 29 U.S.C. §§ 1021-30. Included in this Part is Section 105, entitled "Reporting of Participant's Benefit Rights," which dictates that "[t]he administrator of a defined benefit plan . . . shall furnish a pension benefit statement . . . (i) at least every 3 years to each participant . . . **and** (ii) to a participant

16

or beneficiary of the plan upon written request." 29 U.S.C. § 1025(a)(1)(B)(i), (ii) (emphasis added). The statement "shall indicate" the participant's "total accrued benefits," and may be delivered in written, electronic, or "other appropriate form," so long as the form is reasonably accessible to the participant. 29 U.S.C. § 1025(a)(2). The administrator must also provide a pension benefit statement to each employee at least every three years without a request, but it can fulfill this obligation by providing employees with an annual notice of how to obtain a statement. 29 U.S.C. § 1025(a)(1)(B)(i), (3)(A).

Plan fiduciaries cannot evade this central requirement by insisting that nothing qualifies as a benefit statement, that no one is responsible for the provision of such statements to participants, and that such statements need not be accurate or even prepared or provided in accordance with ERISA's fiduciary standard of care and loyalty.

Defendants primary contention with respect to this count is that ERISA only requires the administrator to provide a plan participant with a benefit statement "upon written request." Dkt. 31, at 23-24. They rely for this proposition on the district court's decision in *Wilson v. Bank of Am. Pension Plan for Legacy Cos.*, 2019 WL 2549044, at *3 (N.D. Ca. June 20, 2019). But that is not exactly what Section 105 says; instead, with respect to a defined and benefit plan, it requires the plan administrator to furnish each participant with a "pension benefit statement" "(i) at least every 3 years . . . **and** (ii) to a participant or beneficiary of the plan upon written request." 29 U.S.C. § 1025(a)(1)(B)(i), (ii) (emphasis added).[5] Thus, *Wilson* overlooked the administrator's obligation to furnish a statement every three years regardless of any request by the participant in attaching a strained construction to the

---

[5] Section 105 allows the administrator, as an alternative, to provide yearly "notice of the availability of the pension benefit statement and the ways in which the participant may obtain such statement." 29 U.S.C. § 1025(a)(3)(A). Notably, this provision does not mandate a written request. Moreover, it is not clear whether the Administrator is relying on or met this notice provision, which in any case is another reason to allow the development of the record.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

"written request" requirement. This holding is especially curious because both the common understanding and dictionary definition of "written" is "made or done in writing." Hacker, *Merriam-Webster.com*, 2020, https://www.merriam-webster.com. A request typed into a computer and delivered electronically fits easily within this definition, which stands in contrast to an oral request, presumably in order to create a record of the request. But whether or not Mr. Wallace's request for a pension statement made through the online portal that IP officials and materials directed Mr. Wallace to use constitutes a written request, and we assert that it does, the administrator was also required to provide a pension benefit statement at least every three years, and did so annually in this case. Complaint ¶ 23. Count Four is premised on Plaintiff's contention that the Administrator failed to provide him with an accurate benefit statement under either the "written request" or three-year requirement. See Complaint ¶¶ 22, 23.

Defendants contends, however, that nothing in the statute requires that the statements be accurate or reliable for retirement planning and that Sections 105(a) and 502(c) do not provide a statutory penalty for failure to provide a statement that is even close to accurate. Dkt. 31, at 24-25. Section 105(a) requires disclosure of a precise number: the participant's "total benefits accrued." 29 U.S.C. § 1025(a)(2)(i)(I). As used in ERISA, "accrued benefit" means the participant's benefit expressed as an annual benefit beginning at normal retirement age, or the actuarial equivalent of that amount, not a guess or an estimate. 29 U.S.C. §§ 1002(23)(A), 1054(c)(3). In this case, unbeknownst to Plaintiff, the amounts that the Administrator (acting through Alight) disclosed to him did not represent his accrued benefit, but rather much more than two times that amount. Therefore, the statements did not meet the administrator's obligations under Section 105(a), and Plaintiff adequately alleges a claim for violation of that provision, as well as for fiduciary breaches under ERISA Section 404 in the careless preparation and misleading contents of these statements. See *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (holding

that fiduciaries have "an obligation to convey complete and accurate information material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information" and "breach their duties if they mislead plan participants or misrepresent the terms or administration of a plan").

The Defendants' contention that a statutory penalty may not be imposed for violation of this provision is therefore in error. Although the Defendants rely on *Christensen v. Qwest Pension Plan*, 462 F.3d 913 (8th Cir. 2006), the Eighth Circuit did not hold that penalties could never be imposed for a violation of Section 105(a), but merely concluded that the district court did not abuse its discretion in declining on summary judgment to do so in that case. *Id.* at 916, 919. Significantly, the court pointed out that in doing a final audit of a pensioner's benefits, which adjusted those benefits downward by less than $300, "there is no evidence of bad faith on the part of anyone, which is relevant to the discretionary penalty decision." *Id.* (citation omitted). Here, Mr. Wallace specifically inquired about the amount of his pension, making it clear that his acceptance of the severance offer was entirely contingent on the amount of his pension only to have the amount he was told reduced post-retirement by thousands of dollars. *Christensen* does not support a conclusion that there is no bad faith or other support for a penalty here, nor does it support granting a motion to dismiss on this basis.

## IV. PLAINTIFF DOES NOT ASSERT A DISGUISED BENEFIT CLAIM, NOR IS HIS CLAIM PRECLUDED BY ERISA SECTION 409

The IP Defendants assert, without citation to the Complaint, that Plaintiff seeks to repackage his benefit denial as a claim for fiduciary breach. Dkt. 31, at 25-26. This is not so. Plaintiff does not challenge the denial of his benefit claim or assert in his complaint that the recalculation of benefits was in error under the plan, and indeed does not sue the pension plan itself for these benefits. Instead, he challenges the conduct of plan fiduciaries in repeatedly and grossly misstating his pension benefits,

19

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

and/or failing to oversee enabling or failing to correct the misstatements of other fiduciaries until two months after he started to receive benefits, rather than before he retired, knowing that Plaintiff was relying on receiving the stated amount in planning for retirement and in making the critical decision to retire early under an offered severance package. Complaint ¶¶ 22-31, 44-45, 52, 59-60, 76-77.

These assertions suffice to state a fiduciary breach claim seeking equitable relief pursuant to ERISA Section 502(a)(3), which, as the Supreme Court has pointed out acts as a "safety net, offering equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity*, 516 U.S. 4at 512. Indeed, *Varity* held that plan participants could pursue a claim for equitable relief under ERISA Section 502(a)(3) to reinstate them to a pension plan where they had been prompted to withdraw based on fiduciary breaches in misrepresenting likely changes to the plan, 516 U.S. at 514-15, similar to the breaches alleged here with respect to misstated benefits which prompted Mr. Wallace to accept an offer to retire earlier than planned. Although the Supreme Court also stated in *Varity* that plaintiffs may not merely "repackage" benefit claims as claims for injunctive or equitable relief under Section 502(a)(3), *id.* at 513-14, the Ninth Circuit has explained that *Varity* only precludes plaintiffs from seeking "double recoveries" under Section 502(a)(3), and rejected the notion that it precludes a plan participants from bringing claims for fiduciary breach simply because they have also sought benefits. *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961-62 (9th Cir. 2016). It is the inadequacy of other available relief that is critical under *Varity*. 516 U.S. at 512.

Thus, it is precisely because Mr. Wallace has no claim for benefits or any other available remedy under Section 502 that he can seek appropriate equitable relief (including by surcharging the fiduciaries for the injury caused by their breaches) under Section 502(a)(3), the pre-*Moyle* district court decision cited by Defendants notwithstanding. Dkt. 31, at 26 (citing *Gurasich v. IBM Ret. Plan*, 2014 WL

5454525, at *5 (N.D. Ca. Oct. 27, 2014)).[6]  Indeed, Defendants' citation of *Gurasich* is curious because, while the court there held that the plan participant could not seek benefits under Section 502(a)(3), it then stated that she could proceed on her claim for "a make-whole remedy to compensate her for losses suffered as a result of Defendants' breach of fiduciary duties."  *Id.* at *5.  That is the primary remedy that Plaintiff seeks.

## V.   PLAINTIFF HAS PROPERLY REQUESTED EQUITABLE ESTOPPEL AS APPROPRIATE EQUITABLE RELIEF TO REMEDY DEFENDANTS' FIDUCIARY BREACHES

Defendants make one primary argument against Plaintiff's request for estoppel: that he failed to meet the two additional elements for estoppel that the Ninth Circuit set forth in *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam).  Dkt. 31, at 27-28.  First, it is important to note that Plaintiff does not assert a "claim" for equitable estoppel, but only asks for estoppel as one of a number of forms of potential relief with respect to his third claim for benefits. Thus, it is not clear how this argument supports Defendants' Motion to Dismiss.  Second, In light of *Amara*, Defendants' arguments against an estoppel remedy are unavailing because, the elements of estoppel under Section 502(a)(3) are those set forth in the treatises, such as Pomeroy and Eaton: (1) words amounting to a misrepresentation of material facts; (2) Defendants' knowledge, "either actual or implied, at the time the representations were made, that they were untrue"; (3) Plaintiffs' lack of knowledge of the truth; (4) Defendants' intent or expectation that the representations be acted upon; (5) Plaintiffs'

---

[6] For this same reason, Defendants' argument with respect to ERISA Section 409, 29 U.S.C. § 1109, is misplaced.  Dkt. 31, at 26.  Section 409 is enforced through Section 502(a)(2), 29 U.S.C. § 1132(a)(2), which, in tandem, permit an award of relief that runs to a plan, and not individual relief.  See *Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140-48 (1985).  Section 502(a)(3) permits appropriate equitable relief, including surcharge and equitable estoppel, to remedy harm occasioned by plan participants as a result of fiduciary breaches.  *Amara*, 563 U.S. at 440-42.  The fact that Plaintiff cannot and does not seek relief under Section 409 thus supports and does not undermine his claim for relief under Section 502(a)(3).

reliance; and (6) detriment to Plaintiffs. See J. Eaton, Handbook of Equity Jurisprudence § 62, p. 150 (1923); 3 S. Symons, Pomeroy's Equity Jurisprudence § 805, pp. 191-92 (5th ed.1941) (both cited in *Amara*, 563 U.S. at 441). See also *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821-22 (9th Cir. 1992) (discussing these requirements for federal common law claim of equitable estoppel); *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997) (same).

In their motion to dismiss, Defendants do not deny that the Complaint here sufficiently pleads the elements of estoppel as set forth in the treatises cited by the Supreme Court, as indeed it does. Defendants had at least implied knowledge that the statements were incorrect because they had all the information necessary to determine that they were incorrect. Implied knowledge is sufficient. Eaton, § 62, p. 150. Defendants do not contend that they corrected their calculations based on new data; rather, they simply and conveniently waited until after Mr. Wallace retired and asked for his pension benefits to conduct an "audit" of Mr. Wallace's existing records in order to determine that Mr. Wallace was entitled to much less than he had been promised for many years and, most importantly, what he was told immediately before he decided to take IP up on its severance offer and retire earlier than he had intended. Complaint ¶¶ 29, 31, 44. And, despite their protests to the contrary, the Defendants plainly intended for Plaintiffs to rely on the statements. Complaint ¶¶ 22-31, 44-45. While the statements recited that they were "estimate[s]," and purported to "reserve[]" IP's "right to correct any errors." they did not state that they were not suitable for use in retirement planning or that participants should consult their own actuaries. A pension statement that is not intended to be relied on for retirement planning is a pointless act.

It is true that, even post-*Amara*, the Ninth Circuit has referred to "additional requirements" for "equitable estoppel in the ERISA context." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014). But this discussion is dicta, both because *Gabriel* acknowledges that there is no longer an "independent cause of

22

Plaintiff's Memorandum Of Points And Authorities In Opposition To International
Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

action" for "equitable estoppel in the ERISA context," but only the traditional equitable remedy, *Id.* at 956 n.4, and because the Gabriel plaintiff could not satisfy even the traditional requirements for estoppel. *Id.* at 961. Moreover, the imposition of "additional requirements" would be inconsistent with *Amara*, and with the Supreme Court decision in *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993), which likewise stressed that equitable relief under Section 502(a)(3) is determined by reference to the categories of relief that were available in equity in the days of the divided bench. *Id.* at 256.

Furthermore, to the extent that extra elements for estoppel as an ERISA remedy survive *Amara* and are still required in courts in the Ninth Circuit, those elements are adequately pled here. The circumstances are extraordinary: Mr. Wallace was approached by IP officials about taking a severance package and retiring early. When he informed these officials that ensuring that he would have an adequate pension was essential to his decision, he was told to check through the online portal and that, although the calculation would not be exact because it would not include his most recent year's salary, it would be higher than the amount stated in the benefit statement he received for the prior year. Complaint ¶¶ 26-30. Moreover, Plaintiff has also alleged facts to support a reasonable inference at this stage of the litigation that there was sufficient ambiguity in the Plan terms and varying interpretations of the Plan, which produced the wildly divergent results with respect to the calculations of Plaintiff's benefits before and after he retired and requested his pension. *E.g.*, Complaint ¶ 49 (noting the complexity entailed in even determining the governing plan documents for various periods of employment with companies later acquired by IP).

Defendants focus on the importance of administering an ERISA plan strictly in accordance with its written terms, citing *U.S. Airways v. McCutchen*, 569 U.S. 88, 100-01 (2013). This focus is a strange choice for a plan administrator that apparently failed to administer its plan in accordance with the plan's written terms in the years

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

leading up to Mr. Wallace's retirement and claims that it and its delegees had no obligation to exercise care in doing so. The centrality of the plan document is a charge laid on administrators, 29 U.S.C. § 1104(a)(1)(D) – not a way to escape liability for shoddy administration.

Defendants also insist that estoppel is precluded because requiring the payment of plan benefits would violate plan terms. Dkt. 31, at 28-29. But, under ERISA, fiduciaries may follow plan terms only if doing so would not violate the other requirements and duties of ERISA. 29 U.S.C. 1104(a)(1)(D); see *Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 328, 375 (1999) (rejecting an argument that plan terms can override state law provisions made part of plans through ERISA's insurance savings provision). Moreover, the Court, in fashioning an appropriate equitable remedy, may order the fiduciaries to make the required payment rather than the Plan. Thus, if the requirements of estoppel are met, it is available to remedy fiduciary breaches, plan language to the contrary notwithstanding.

## VI.    PLAINTIFF MAY SEEK SURCHARGE

As the Ninth Circuit, following *Amara*, has noted, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty." *Gabriel*, 773 F.3d at 957. This "surcharge remedy extend[s] to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary" and is available under ERISA "for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Amara*, 563 U.S. at 442.

The IP Defendants argue that surcharge is not available in the absence of a breach of duty by a fiduciary. Plaintiff agrees that he cannot obtain relief for a breach of fiduciary duty unless he first proves one. Plaintiff, however, has plausibly alleged that the IP Defendants were fiduciaries and breached their duty to him for the reasons discussed above, and determining the appropriate remedy is not necessary or

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Plaintiff's Memorandum Of Points And Authorities In Opposition To International Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

warranted at the pleadings stage.  Thus, the fact that Plaintiffs seeks surcharge as a remedy for the fiduciary breaches alleged provides no basis to dismiss this case.

## VII.  ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

In the Ninth Circuit, if a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts,'"  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (*quoting Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

For the reasons discussed above, this Court should deny the IP Defendants' Motion to Dismiss in its entirety. In the event that this Court grants any part of the Motion to Dismiss, Mr. Wallace seeks leave to amend the Complaint to cure any perceived deficiencies.

## <u>CONCLUSION</u>

Plaintiff respectfully requests that this Court deny the IP Defendants' Motion to Dismiss and allow him to pursue the claims in this case.

Respectfully submitted

Dated:  June 8, 2020                     KANTOR & KANTOR, LLP


By:   */s/ Elizabeth Hopkins*
        Elizbeth Hopkins
        Attorneys for Plaintiff,
        DONALD A. WALLACE

Plaintiff's Memorandum Of Points And Authorities In Opposition To International Paper Defendants' Motion To Dismiss Plaintiff's Complaint [Dkt. No. 30]