Elizabeth Hopkins – CA State Bar No. 324431
 E-mail: ehopkins@kantorlaw.net
Susan Meter – CA State Bar No. 236133
 E-Mail: smeter@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile:  (818) 350-6272

Attorneys for  Plaintiff
DONALD A. WALLACE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD A. WALLACE,<br><br>            Plaintiff,<br><br>     vs.<br><br>INTERNATIONAL PAPER COMPANY, A New York Corporation; FIDUCIARY REVIEW COMMITTEE Of The RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY; PLAN ADMINISTRATOR Of The RETIREMENT PLAN OF INTERNATIONAL PAPER COMPANY; And ALIGHT SOLUTIONS LLC (Formerly Known As Hewitt Associates LLC),<br><br>            Defendants. | Case No. 8:20-cv-00242-JVS-DFM<br><br>**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO INTERNATIONAL PAPER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [DKT. NO. 32]**<br><br>Date:         June 29, 2020<br>Time:        1:30 p.m.<br>Ctrm:        Santa Ana #10C<br>Judge:       Hon. James V. Selna<br><br>Complaint Filed: February 6, 2020<br><br>Trial Date: None Set |

PLAINTIFF'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF
MEMORANDUM OF OPPOSITION TO INTERNATIONAL PAPER
DEFENDANTS' MOTION TO DISMISS

In further opposition to the IP Defendant's motion to dismiss (Dkt. 30), Plaintiff submits notice of the attached decisions in *Sullivan Mesteck v. Verizon Communications, Inc.*, No. 18-1591-cv, 2020 WL 2820334 (2d Cir. June 1, 2020).

In *Sullivan*, the Second Circuit held that a beneficiary under an ERISA life insurance plan could pursue claims for equitable relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), against Verizon as a plan fiduciary where Aon Hewitt, which operated the Verizon call center, misinformed the decedent plan participant about the amount of her life insurance benefits prior to her death. The court concluded that the plaintiff adequately alleged the elements of estoppel, including by showing extraordinary circumstances by showing repeated misrepresentations that amounted to gross negligence. 2020 WL 2820334, at *4-*6. This is relevant to the argument made on pages 21-24 of Plaintiff's Opposition (Dkt. 32). The Second Circuit additionally held that the Ms. Sullivan's claims for fiduciary breach against Verizon were sufficient to support a claim for equitable relief in the form of surcharge. 2020 WL 2820334, at *6. This is relevant to the argument made on pages 24-25 of Plaintiff's Opposition. Finally, as relevant to the argument on pages 12-14 of Plaintiff's Opposition, the Second Circuit held that Verizon could not hide behind the actions of Hewitt, its agent, to argue that it did not breach its duties with regard to the repeated misrepresentations. 2020 WL 2820334, at *7-*8.

Respectfully submitted

Dated: June 15, 2020              KANTOR & KANTOR, LLP

By:  */s/ Elizabeth Hopkins*
     Elizbeth Hopkins
     Attorneys for Plaintiff,
     DONALD A. WALLACE

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1

PLAINTIFF'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO INTERNATIONAL PAPER DEFENDANTS' MOTION TO DISMISS

# EXHIBIT A

2020 WL 2820334
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Kristine SULLIVAN-MESTECKY, individually and as the beneficiary of the life insurance policy of Kathleen Sullivan, deceased, Plaintiff-Appellant,
v.
VERIZON COMMUNICATIONS INC. and The Prudential Insurance Company of America, Defendants-Appellees.[*]

No. 18-1591-cv
|
August Term, 2019
|
Argued: May 15, 2019
|
Decided: June 1, 2020

**Synopsis**
**Background:** Beneficiary of group life insurance policy brought action in state court against plan administrator and insurer asserting state law claims challenging the denial of benefits. Following removal, beneficiary asserted additional claims under the Employee Retirement Income Security Act (ERISA). The United States District Court for the Eastern District of New York, Sandra J. Feuerstein, Senior District Judge, 2016 WL 3676434, granted in part and denied in part defendants' motion to dismiss, and, 2016 WL 11263128, denied reconsideration of that decision, and subsequently, 2018 WL 2229140, adopted the opinion of Anne Y. Shields, United States Magistrate Judge, 2018 WL 2422678, and granted summary judgment to defendants on the remaining claims. Beneficiary appealed.

**Holdings:** The Court of Appeals, Walker, Senior Circuit Judge, held that:

[1] policy limited beneficiary's death benefits to a percentage of plan participant's annual $18,600 income;

[2] beneficiary stated state estoppel claim under ERISA against plan administrator;

[3] administrator's alleged breach of its fiduciary duties was sufficient to support the equitable remedy of surcharge under ERISA;

[4] beneficiary adequately pled circumstances that would permit district court to equitably reform the terms of her plan;

[5] equitable relief under ERISA was not warranted against insurer arising from plan administrator's allegedly fraudulent misrepresentations to plan participant; and

[6] beneficiary alleged that plan administrator, through its ministerial agent, breached its fiduciary duty.

Affirmed in part, vacated in part, and remanded.

West Headnotes (19)

[1]     **Federal Courts🔑Summary judgment**

Court of Appeals reviews a grant of summary judgment de novo, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant.

[2]     **Federal Courts🔑Pleading**
        **Federal Courts🔑Dismissal for failure to state a claim**

Court of Appeals reviews de novo a district court's dismissal of a complaint for failure to state a claim, construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Fed. R. Civ. P. 12(b)(6).

[3]     **Labor and Employment🔑Welfare Plans**

Group life insurance policy governed by ERISA limited beneficiary's death benefits to a percentage of plan participant's annual $18,600 income, as stated in both the plan and its

description, under the "1 x Pay" option chosen by plan participant, and thus, the $582,600 in benefits to which beneficiary believed she was entitled never vested under the terms of the plan, despite plan administrator's failure to correct, until after participant had died, its mistake showing her annual income as $970,920, due to error in coding her annual income as her weekly income. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(1)(B).

[4] **Labor and Employment** — Arbitrary and capricious

Because ERISA-governed life insurance plan expressly granted discretionary authority to plan administrator and insurer to interpret the plan's terms, the district court could not overturn their interpretation of the plan unless it was arbitrary and capricious. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[5] **Labor and Employment** — Estoppel of plan to deny eligibility or coverage

Beneficiary of group life insurance policy governed by ERISA plausibly alleged a promise by plan administrator to pay generous death benefits, as required to state estoppel claim under ERISA; beneficiary alleged administrator's agent sent plan participant retirement enrollment worksheet indicating that participant was eligible for a life insurance policy valued at $679,700, that following that initial document, administrator's agents sent her a retirement confirmation of enrollment, a confirmation of coverage on demand, a beneficiary confirmation notice, and a W-2 form, all of which represented that administrator was providing her with this generous life insurance policy. Employee Retirement Income Security Act of 1974 §§ 402, 502, 29 U.S.C.A. §§ 1102(a)(1), 1132(a)(3).

[6] **Labor and Employment** — Procedure to amend; oral modification

Oral promises are unenforceable under ERISA. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[7] **Equity** — Fraud
**Fraud** — Nature of fraud

"Fraud" in a court of equity properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another.

[8] **Labor and Employment** — Estoppel of plan to deny eligibility or coverage

Estoppel can be plausibly pled as an appropriate equitable remedy by an ERISA plaintiff alleging gross negligence in the absence of intentional inducement. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[9] **Labor and Employment** — Estoppel of plan to deny eligibility or coverage

To make a claim for estoppel under ERISA provision authorizing equitable remedies, a plaintiff must plausibly allege five elements: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, (4) an injustice if the promise is not enforced, and (5) extraordinary circumstances. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. §

1132(a)(3).

**[10]    Labor and Employment⚖Estoppel of plan to deny eligibility or coverage**

Beneficiary of group life insurance policy governed by ERISA amply pled that reliance and injury followed upon promise by plan administrator to pay generous death benefits, as required to state estoppel claim under ERISA; beneficiary alleged that, in response to administrator's written promise, participant enrolled in administrator's offered plan, paid taxes based on the plan's taxable imputed income, and forwent procuring an alternative life insurance policy, and that beneficiary, who was participant's daughter, also paid participant's debts and took an unpaid leave of absence from work to take care of participant, anticipating that her short-term financial losses would be more than covered by participant's life insurance payout. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

**[11]    Labor and Employment⚖Estoppel of plan to deny eligibility or coverage**

Beneficiary of group life insurance policy satisfactorily pled extraordinary circumstances, as required to state estoppel claim under ERISA, based on plan administrator's negligence in making repeated and unambiguous oral and written representations to plan participant that beneficiary would receive more than half a million dollars in death benefits, when actual benefits owed were fraction of participant's $18,600 annual income; administrator's agents sent numerous mailings informing and assuring participant that she was entitled to $679,000 policy, participant expressed her surprise at the amount, effectively alerting administrator of its miscalculation, but it was only after participant's death, when purchase of alternative life insurance to support beneficiary was impossible,

that administrator attempted to correct its clerical error. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

**[12]    Labor and Employment⚖Equitable relief; injunction**

ERISA plan administrator's alleged breach of its fiduciary duties was sufficient to support the equitable remedy of surcharge under ERISA, based on administrator's alleged gross negligence in its management of plan participant's group life insurance policy by consistently failing to provide complete and accurate information about participant's status and options in response to her questions about plan terms and/or benefits, after administrator's agent represented to participant that her beneficiary would receive more than half a million dollars in death benefits, when actual benefits owed were fraction of participant's $18,600 annual income. Employee Retirement Income Security Act of 1974 §§ 404, 502, 29 U.S.C.A. §§ 1104, 1132(a)(3).

**[13]    Labor and Employment⚖Equitable relief; injunction**

It is appropriate for a plaintiff asserting the equitable remedy of surcharge under ERISA to seek relief in the amount of the promised policy, not just in the amount of wrongly-accepted premiums or wrongly-paid taxes, under the equitable remedy of surcharge. Employee Retirement Income Security Act of 1974 § 404, 29 U.S.C.A. § 1104.

**[14]    Labor and Employment⚖Equitable relief; injunction**

Beneficiary of group life insurance policy adequately pled circumstances that would permit district court to equitably reform the terms of her plan pursuant to ERISA, sufficient to bind plan administrator to its allegedly fraudulent misrepresentations to participant that she was entitled to a life insurance policy in the amount of $679,000; beneficiary alleged that, as a result of administrator's fraudulent representations, participant reasonably but mistakenly expected that beneficiary would receive the generous death benefits. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[15] **Labor and Employment** Equitable relief; injunction

Reformation of a contract under ERISA does not require a showing of actual harm. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[16] **Labor and Employment** Equitable relief; injunction

Equitable relief under ERISA was not warranted against insurer arising from plan administrator's allegedly fraudulent misrepresentations to plan participant that she was entitled to group life insurance policy in the amount of $679,000 when actual benefits owed were fraction of participant's $18,600 annual income; unlike administrator and its agents, insurer sent only one letter to participant, informing her how the value of her policy would decrease as she aged, neither insurer nor its agents fielded questions from participant regarding her policy and repeatedly misrepresented its benefits, and plan administrator, not insurer, was responsible for assessing participant's eligibility for and enrolling her in her benefits plan. Employee Retirement Income Security Act of 1974 § 502, 29 U.S.C.A. § 1132(a)(3).

[17] **Labor and Employment** Misrepresentations or omissions in general

Beneficiary of group life insurance plan governed by ERISA plausibly alleged that plan administrator, through ministerial agent it had designated to communicate with plan participant about her plan benefits, breached its fiduciary duty to act with care, skill, prudence, and diligence when it failed to provide participant with complete and accurate information on her benefits by directly and repeatedly informing her that she had a life insurance policy of $679,000 when actual benefits owed were fraction of participant's $18,600 annual income; in responding to participant's queries about her policy, administrator allegedly never referred her to clear plan terms that would have alerted her to her ineligibility for the promised benefits. Employee Retirement Income Security Act of 1974 § 404, 29 U.S.C.A. § 1104(a)(1)(B).

[18] **Labor and Employment** What Activities Are in Fiduciary Capacity

Plan administrators act as fiduciaries under ERISA when they communicate with plan members and beneficiaries about plan benefits. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

[19] **Labor and Employment** Who Are Fiduciaries

Plan administrators may perform a fiduciary function under ERISA through ministerial agents, even without converting those individual agents themselves into fiduciaries. Employee Retirement Income Security Act of 1974, § 2 et

seq., 29 U.S.C.A. § 1001 et seq.

Appeal from the United States District Court for the Eastern District of New York.

**Attorneys and Law Firms**

John Stokes (Peter K. Stris, on the brief), Stris & Maher LLP, Los Angeles, CA, for Appellant.

James P. Hollihan, Duane Morris LLP, Pittsburgh, PA, and Kirsten McCaw Grossman (Robin H. Rome and Kristine V. Ryan, on the brief), Nukk Freeman & Cerra, P.C., Chatham, NJ, for Appellees.

Before: Walker, Cabranes, and Hall, Circuit Judges.

**Opinion**

John M. Walker, Jr., Circuit Judge:

**\*1** Plaintiff-Appellant Kristine Sullivan-Mestecky brought this action individually and as the beneficiary of the life insurance policy of her mother, Kathleen Sullivan, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., following the denial of Sullivan's life insurance benefits by Defendants-Appellees Verizon Communications Inc. (Verizon) and The Prudential Insurance Company of America (Prudential). On appeal, Sullivan-Mestecky argues that the district court (Sandra J. Feuerstein, *Judge*) erred in granting summary judgment to Verizon and Prudential on her claim for benefits under ERISA § 502(a)(1)(B) and in dismissing her fiduciary breach claim under ERISA § 502(a)(3). We conclude that the district court did not err in dismissing Sullivan-Mestecky's § 502(a)(1)(B) claim against both defendants and her § 502(a)(3) claim against Prudential. We conclude, however, that the district court did err in dismissing her § 502(a)(3) claim against Verizon. We therefore AFFIRM the district court's dismissal of Sullivan-Mestecky's § 502(a)(3) claim against Prudential and its ruling granting Verizon and Prudential summary judgment on Sullivan-Mestecky's § 502(a)(1)(B) claim, VACATE the district court's dismissal of Sullivan-Mestecky's § 502(a)(3) claim against Verizon, and REMAND for further proceedings consistent with this opinion.

**BACKGROUND**

Kathleen Sullivan was employed by the New York Telephone Company, a predecessor entity to Verizon, from 1970 until 1978, during which period her annual income was $18,600. Sullivan received various benefits from the New York Telephone Company and other predecessor companies of Verizon, both individually and through her husband, who was also employed by the New York Telephone Company. Upon Sullivan's husband's death in January 2005, Verizon terminated all of Sullivan's benefits, which Sullivan challenged over subsequent years.

**\*2** Pursuing her challenge, in June 2011, Sullivan contacted the Verizon Benefits Center, which at that time was administered on behalf of Verizon by the Aon Hewitt Company. The Verizon Benefits Center responded by sending Sullivan a "Retirement Enrollment Worksheet" on Verizon letterhead.[1] The worksheet said that Sullivan was eligible for life insurance option "1 x Pay" of Verizon's Group Life Insurance plan, which provided coverage in the amount of $679,700.[2] Following the instructions on the worksheet, Sullivan called the Verizon Benefits Center to enroll in "1 x Pay."

After enrolling and designating her daughter, Kristine Sullivan-Mestecky, as the beneficiary of the life insurance policy, Sullivan received various mailings from Verizon, as plan administrator, that confirmed the existence and coverage amount of the policy. Some of these mailings prompted Sullivan to call the Verizon Benefits Center for more information. On these calls, Sullivan expressed her understanding, and even surprise, about the extent of her benefits. However, Center representatives repeatedly confirmed the existence and coverage amount of the policy. As one example, during a call on December 19, 2011, Sullivan told a representative, "And hell. I have benefits I didn't even know existed."[3] The representative informed Sullivan, "Okay what I'm showing here, your retiree—retiree life is currently [$]679,700."[4] The representative confirmed the coverage amount three more times on the call, explaining further how the amount would decline as Sullivan aged.

Sullivan's calls raised questions internally at Aon Hewitt about her coverage amount. On July 26, 2011, one Aon Hewitt employee wrote to a colleague that Sullivan "was not salaried when active she was hourly. ... The dollar amount seems high is there a possibility that [our software] could be giving a higher figure than what

[Sullivan] is eligible for?"[5] The next day, another Aon Hewitt employee wrote back that Sullivan's annual income had been "$970920," approximately 52 times her actual annual income, and confirmed (erroneously) that the software "shows the correct amount of life insurance."[6] It turned out that Aon Hewitt had coded Sullivan's annual $18,600 income as her weekly income, but did not catch the mistake until after she died.

Sullivan-Mestecky, understanding herself to be the beneficiary of a generous life insurance policy, allowed her aging mother to live rent-free at her home, covered her mother's living expenses, and paid off her mother's debts. Sullivan-Mestecky also took an extended unpaid leave of absence from work to care for Sullivan while Sullivan was living with her. On November 17, 2012, Sullivan died. Based on Sullivan's age at the time of her death, Sullivan-Mestecky believed that her life insurance policy was worth $582,600. Sullivan-Mestecky submitted a claim to Prudential, as claims administrator, for $582,600 in death benefits under the policy. In response, Prudential paid $11,380 for Sullivan's funeral expenses and sent Sullivan-Mestecky a check for $20, which Prudential said was the remainder of Sullivan's death benefits.

Sullivan-Mestecky disputed the non-payment of her benefits, which she expected to be in line with what her mother had been told. Verizon responded that "Hewitt operating under the title Verizon Benefits Center" had mistakenly calculated Sullivan's large coverage amount and thus "provided Ms. Sullivan with incorrect information" about her life insurance policy.[7] Verizon and Prudential rejected Sullivan-Mestecky's claim. Sullivan-Mestecky then filed this suit in state court. The defendants removed the case to the Eastern District of New York, and Sullivan-Mestecky filed an amended complaint adding claims under §§ 502(a)(1)(B) and 502(a)(3) of ERISA. On July 7, 2016, the district court granted Verizon's and Prudential's motion to dismiss the § 502(a)(3) claim on the pleadings, under Rule 12(b)(6).[8] And on May 16, 2018, the district court granted summary judgment to Verizon and Prudential on the § 502(a)(1)(B) claim.

## DISCUSSION

*3 [1] [2]On appeal, Sullivan-Mestecky challenges both decisions. "We review a grant of summary judgment de novo, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant."[9] Similarly, "[w]e review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."[10]

**I. Sullivan-Mestecky's § 502(a)(1)(B) claim.**
[3]Section 502(a)(1)(B) of ERISA empowers "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan."[11] After reviewing the plan documents and communications between Sullivan, Verizon, and Prudential that emerged during discovery, the district court concluded that the terms of Verizon's Group Life Insurance plan did not entitle Sullivan-Mestecky to benefits in excess of $11,400 and granted summary judgment in favor of Verizon and Prudential. On appeal, Sullivan-Mestecky argues that the district court erred in allowing Verizon and Prudential to reduce her mother's benefits after they had vested upon her death.

[4]Sullivan-Mestecky misunderstands the district court's ruling. The Group Life Insurance plan expressly granted discretionary authority to Verizon and Prudential to interpret the plan's terms. Because the plan granted such authority to Verizon and Prudential, the district court could not overturn their interpretation of the plan unless it was "arbitrary and capricious."[12] The district court found that Verizon and Prudential's interpretation of the plan—that Sullivan-Mestecky was entitled to no more than $11,400—was based on substantial evidence and not arbitrary or capricious. Notwithstanding the clerical error reflected on the Retirement Enrollment Worksheet and other documents, Section 5.4.1 of the plan clearly explained that its "1 x Pay" option entitles beneficiaries to a percentage of the participant's annual salary, to be reduced as the participant ages. None of the mailings Sullivan received from Verizon or Prudential purported to displace Section 5.4.1. Under the terms of Section 5.4.1, Sullivan-Mestecky was entitled to a fraction of Sullivan's annual income of $18,600. Verizon and Prudential chose, in their discretion, to interpret Sullivan's plan consistent with Section 5.4.1, not with her Retirement Enrollment Worksheet and other documents. Deferring to that reading, the district court found that Verizon and Prudential provided Sullivan-Mestecky with the benefits that the plan had always promised: $11,400.

On appeal, Sullivan-Mestecky does not challenge Verizon and Prudential's interpretation of Section 5.4.1 or

expressly take the position that their interpretation of the plan as a whole was arbitrary and capricious. Instead, she implies that the terms of the plan entitled her to the more generous death benefits and argues that Verizon and Prudential's interpretation resulted in an impermissible retroactive amendment to Sullivan's plan after her death. She cites *Blackshear v. Reliance Standard Life Ins. Co.*,[13] but *Blackshear* is inapposite. In *Blackshear*, the Fourth Circuit found that a fiduciary could not correct a clerical error that appeared in a participant's ERISA plan and summary plan description after that participant died, causing the benefits as set forth in the plan to vest with the beneficiary.[14] The outcome in *Blackshear* was premised on the fact that the erroneous terms in the plan and its description unambiguously provided for the benefits at issue. Here, terms limiting Sullivan's death benefits to a percentage of her annual income were accurately stated in the plan and its description. The generous benefits Sullivan-Mestecky seeks never vested under the terms of the plan. We find no reason to disturb the district court's grant of summary judgment on Sullivan-Mestecky's § 502(a)(1)(B) claim.

**II. Sullivan-Mestecky's § 502(a)(3) claim.**

**\*4** [5]Sullivan-Mestecky's § 502(a)(3) claim requires an entirely different analysis because, where circumstances allow, ERISA provides for equitable remedies that transcend the plan. Section 502(a)(3) authorizes a "participant, beneficiary, or fiduciary" of an employee benefit plan to bring a civil action to obtain "appropriate equitable relief" to redress violations of ERISA Subchapter I, including, as relevant here, fiduciary breaches.[15] Without addressing whether Verizon and Prudential had breached their fiduciary duties under ERISA Subchapter I, as opposed to the terms of Sullivan's plan and summary plan description, the district court dismissed the § 502(a)(3) claim for failure to state a claim under Rule 12(b)(6) on the basis that Sullivan-Mestecky sought an impermissible remedy. The district court concluded that Sullivan-Mestecky, despite framing her claim as one for injunctive relief, could be "entirely compensated by damages allowing her to recover the value of [Sullivan's] death benefits" and had therefore brought a claim for money damages rather than for equitable relief.[16]

Sullivan-Mestecky argues, however, that the district court's classification of her claim as one for damages rather than for equitable relief conflicts with the Supreme Court's decision in *CIGNA Corp. v. Amara*.[17] She contends that *Amara* undermines the district court's reasoning with its holding that "the fact that ... relief takes the form of a money payment does not remove it from the category of traditionally equitable relief" because "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation.' "[18] *Amara* details three different kinds of equitable relief that historically provided a "kind of monetary remedy" even "prior to the merger of law and equity"[19]: estoppel, surcharge, and reformation.[20] Sullivan-Mestecky argues that her claim satisfies the requirements of each. For the reasons we now set forth, we agree that Sullivan-Mestecky is appropriately seeking equitable relief and hold that her § 502(a)(3) claim can proceed against Verizon but not Prudential.

A. <u>Appropriate Equitable Relief</u>

1. Estoppel

The Restatement (Second) of Contracts provides that promissory estoppel is an appropriate equitable remedy when a "promisor should reasonably expect [his promise] to induce action or forbearance on the part of the promisee," the promise actually "does induce such action or forbearance," and "injustice can be avoided only by enforcement of the promise."[21] We have previously found that "principles of estoppel can apply in ERISA cases," albeit only "under extraordinary circumstances."[22] We have required a showing of extraordinary circumstances "to lessen the danger that commonplace communications from employer to employee will routinely be claimed to give rise to employees' rights beyond those contained in formal benefit plans."[23] As a result, to make a claim for estoppel under § 502(a)(3), a plaintiff must plausibly allege five elements: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, ... (4) an injustice if the promise is not enforced," and (5) extraordinary circumstances.[24]

The district court held that Sullivan-Mestecky had not plausibly alleged the requisite elements of an ERISA estoppel claim. It found that, "[t]o the extent plaintiff relies upon alleged oral representations by defendants as the basis for her promissory estoppel claim, her claim fails 'because oral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan.' "[25] It then determined that Sullivan-Mestecky's "amended complaint is bereft of any factual allegations

from which 'extraordinary circumstances' may reasonably be inferred" because none of the documents sent by Verizon or Prudential "were sent in order to induce Sullivan or plaintiff to take any particular action for the benefit of the defendant who sent the particular document."[26]

***5** [6]We disagree with the district court's reasoning in two respects. First, although the district court correctly recited the law of this circuit that "oral promises are unenforceable under ERISA,"[27] it went beyond that proposition in declining to consider whether the Verizon Benefits Center's repeated oral representations collectively supported Sullivan-Mestecky's estoppel claim as an extraordinary circumstance. There is daylight between considering an oral representation simply as the requisite promise in an estoppel analysis and considering an oral representation as a fact exacerbating, if not supplying, the extraordinary circumstances under which the requisite promise was made, was relied upon, caused injury, or would lead to injustice if unenforced. We see no conflict between considering as an extraordinary circumstance the Verizon Benefits Center's oral misrepresentations, here coupled with misrepresentations in written documents, and ERISA's demand that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument."[28] We therefore examine the Verizon Benefits Center's repeated oral assurances to Sullivan about the value of her life insurance policy in determining whether Sullivan-Mestecky has pled extraordinary circumstances.

[7] [8]Second, we take issue with the district court's implication that extraordinary circumstances arise only when the requisite promise was made for the purpose of inducing certain employee conduct. In *Devlin v. Empire Blue Cross and Blue Shield*, we expressly disavowed the existence of such a rule and left open the possibility that "extraordinary circumstances other than intentional inducement would suffice" for an ERISA estoppel claim.[29] And while Verizon highlights our statement in *Greifenberger v. Hartford Life Ins. Co.* that "the 'extraordinary circumstances' necessary [for] equitable estoppel in the context of an ERISA plan require conduct tantamount to fraud,"[30] the Supreme Court has long recognized that "[f]raud has a broader meaning in equity (than at law) and intention to defraud or to misrepresent is not a necessary element."[31] "Fraud" in a "court of equity properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another."[32] The breadth of courts' power in equity has led at least one circuit, the Sixth, to allow ERISA estoppel claims regarding "such gross negligence as to amount to constructive fraud."[33] We now join the Sixth Circuit in finding that estoppel can be plausibly pled as an appropriate equitable remedy by an ERISA plaintiff alleging gross negligence in the absence of intentional inducement.

[9]Sullivan-Mestecky has plausibly pled the five elements required to make a claim for estoppel against Verizon. In June 2011, Verizon's agent sent Sullivan the Retirement Enrollment Worksheet indicating that Sullivan was eligible for a life insurance policy valued at $679,700. Following that initial document, Verizon's agents sent Sullivan a Retirement Confirmation of Enrollment, a Confirmation of Coverage on Demand, a Beneficiary Confirmation Notice, and a W-2, all of which represented that Verizon was providing her with this generous life insurance policy.[34] These written documents, taken together, constitute and reflect the promise that Sullivan-Mestecky seeks to enforce.

[10]Sullivan-Mestecky has amply pled that reliance and injury followed upon this promise. In response to Verizon's written promise, Sullivan enrolled in Verizon's offered plan, paid taxes based on the plan's taxable imputed income, and forwent procuring an alternative life insurance policy.[35] Sullivan-Mestecky also paid her mother's debts and took an unpaid leave of absence from work to take care of her mother, anticipating that her short-term financial losses would be more than covered by Sullivan's life insurance payout. It would be unjust to allow these losses and forbearances, traceable to Verizon's gross negligence, to be borne by Sullivan and her daughter Sullivan-Mestecky, both of whom believed Verizon's repeated misrepresentations. Altogether, Sullivan-Mestecky has satisfied the standard requirements of promissory estoppel.

**\*6** [11]The final requirement of ERISA estoppel—extraordinary circumstances—is also met here based on Verizon's conduct amounting to gross negligence, as follows. Verizon's agents sent numerous mailings informing and assuring Sullivan that she was entitled to a life insurance policy in the amount of $679,000. She relied on these representations only after diligently and repeatedly confirming their veracity and meaning with the Verizon Benefits Center. On calls with the Verizon Benefits Center, Sullivan expressed her surprise at the stated value of her life insurance policy, effectively alerting Verizon to the fact that it may have miscalculated the value. Not only did Sullivan draw attention to the high coverage figure, but an Aon Hewitt employee flagged the policy amount, writing in an email to a colleague that the amount seemed high and asking if the company's software was somehow computing the

wrong amount. Another Aon Hewitt employee then responded, erroneously, that the amount was correct. Instead of opening an investigation that likely would have uncovered the clerical error that led Sullivan and her daughter to believe that she had procured a generous life insurance policy, Verizon representatives reassured Sullivan that her beneficiary would receive, after the age discount, more than half a million dollars in death benefits. It was only after Sullivan's death, when the purchase of alternative life insurance to support Sullivan-Mestecky was impossible, that Verizon attempted to correct its clerical error. In contravention of what it had repeatedly and unambiguously represented to Sullivan in writing and on calls, Verizon paid Sullivan-Mestecky a total of $11,400, less than two percent of what Verizon had promised. Verizon's acts of gross negligence present circumstances far "beyond the ordinary."[36] The persistence and size of Verizon's error, notwithstanding the ample inquiry notice provided by Sullivan's calls to the Verizon Benefits Center, were "remarkable."[37] We find that Sullivan-Mestecky satisfactorily pled extraordinary circumstances.

That Sullivan-Mestecky pled estoppel as "appropriate equitable relief" is sufficient to determine that the district court erred in dismissing her § 502(a)(3) claim against Verizon. Still, we briefly address Sullivan-Mestecky's argument that her § 502(a)(3) claim alternatively merits the remedy of surcharge or reformation. While our circuit's law on these remedies is somewhat less developed than it is on estoppel in the ERISA context, we believe that Sullivan-Mestecky also has adequately pled facts meeting their requirements.

2. Surcharge

[12] [13]In *Amara*, also a § 502(a)(3) case, the Supreme Court described surcharge historically as "relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty."[38] *Amara* continued, "The surcharge remedy extended to a breach of trust committed by a fiduciary" whose role is "analogous to [that of] a trustee" and "encompass[ed] any violation of a duty imposed upon that fiduciary."[39] Inasmuch as ERISA imposes fiduciary duties on parties who manage employee benefit plans,[40] the Supreme Court has recognized that "these fiduciary duties draw much of their content from the common law of trusts, the law that governed most benefit plans before ERISA's enactment."[41] In this regard, Sullivan-Mestecky's § 502(a)(3) claim is dependent on her allegation of fiduciary breach, specifically that Verizon and Prudential failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," as ERISA requires.[42] As outlined above, Sullivan-Mestecky plausibly pled that Verizon breached its fiduciary duties through its gross negligence in its management of Sullivan's life insurance policy by consistently failing to "provide complete and accurate information" about Sullivan's "status and options" "in response to [Sullivan's] questions about plan terms and/or benefits."[43] This fiduciary breach is sufficient to support the equitable remedy of surcharge.[44]

3. Reformation

*7 [14] [15]Finally, *Amara* describes "[t]he power to reform contracts (as contrasted with the power to enforce contracts as written)" as "a traditional power of an equity court, not a court of law."[45] It notes that " 'equity would reform [a] contract, and enforce it, as reformed, if ... mistake or fraud were shown.' "[46] Following the Supreme Court's remand in *Amara*, the Second Circuit elaborated that "[a] contract may be reformed due to the mutual mistake of both parties, or where one party is mistaken and the other commits fraud or engages in inequitable conduct."[47] Reformation does not require a showing of actual harm.[48] We need not discuss mutual mistake because Sullivan-Mestecky has adequately pled that Verizon committed equitable fraud by misrepresenting that Sullivan was entitled to a life insurance policy in the amount of $679,000. As a result of Verizon's fraudulent representations, Sullivan reasonably but mistakenly expected that Sullivan-Mestecky would receive the generous death benefits. Sullivan-Mestecky has thereby adequately pled circumstances that would permit the district court to equitably reform the terms of her plan with Verizon, sufficient to bind Verizon to its fraudulent representations. Reforming the plan to accord with Sullivan's reasonable expectations is an appropriate equitable remedy.[49]

[16]Although we find that Sullivan-Mestecky has plausibly pled circumstances that would entitle her to "appropriate equitable relief" against Verizon under § 502(a)(3), her arguments do not carry the same force against Prudential. Unlike Verizon and its agents, Prudential sent only one letter to Sullivan, informing her how the value of her policy would decrease as she aged. Neither Prudential nor

its agents fielded questions from Sullivan regarding her policy and repeatedly misrepresented its benefits. We are reluctant to say that Prudential's single mailing was even negligent. As the plan administrator, Verizon, not Prudential, was responsible for assessing Sullivan's eligibility for and enrolling Sullivan in her benefits plan. The core of Sullivan's dispute was therefore with Verizon. Even if Prudential could have checked Verizon's work to confirm that Sullivan had been properly enrolled, it had no duty to do so and any failure in that regard pales in comparison to Verizon's gross negligence and does not rise to the level of extraordinary circumstances or equitable fraud.

### B. Fiduciary Breach

[17]Unable to provide a compelling rationale for why Sullivan-Mestecky is not able to pursue equitable relief, Verizon makes two arguments to support its denial that it committed a fiduciary breach. Verizon first claims that its agents, not Verizon itself, ran the Verizon Benefits Center and provided the misinformation about which Sullivan-Mestecky complains. Verizon then argues that, in any event, our *In re DeRogatis* decision precludes liability for unintentional misrepresentations when the pertinent terms of the employee benefits plan are clear.[50] Neither argument is persuasive.

[18] [19]First, as *In re DeRogatis* held, plan administrators, like Verizon, "act as fiduciaries when they communicate with plan members and beneficiaries about plan benefits."[51] As that case explained, plan administrators "may perform a fiduciary function through ministerial agents," such as Aon Hewitt in this case, even "without converting those individual agents themselves into fiduciaries."[52] Accordingly, when Verizon arranged for Aon Hewitt to communicate with Sullivan about her plan benefits, Verizon was performing a fiduciary function and was bound by its fiduciary duty to properly administer the plan. Although Verizon makes much of the fact that the district court "unequivocally ruled that Hewitt was not a plan administrator or fiduciary" for Sullivan's benefits plan,[53] this finding, based on Aon Hewitt's status as a ministerial agent, does not prevent us from imputing Aon Hewitt's gross negligence to Verizon, Aon Hewitt's principal. Indeed, Aon Hewitt's status as a ministerial agent allows us to do so.[54] Verizon cannot hide behind Aon Hewitt's actions to evade liability for the fiduciary breach that occurred here.

*8 Nor can Verizon hide behind Sullivan's plan documents, which it characterizes as "clear, unambiguous, and in no way lack[ing in] clarity."[55] Verizon urges us to read *In re DeRogatis* as foreclosing liability for unintentional misrepresentations when a fiduciary has provided a plan participant with a clear and unambiguous summary plan description. But *In re DeRogatis* expressly declined to answer the question of whether "an ERISA fiduciary may breach a duty because of unintentional misrepresentations even when the SPD [summary plan description] is clear if there is no evidence that the plaintiff knew or should have known of the applicable SPD provisions at the time of the relevant conduct."[56] *In re DeRogatis* found that the plaintiff had every reason to know of the applicable, clear plan terms because even though the fiduciary's agents had provided ambiguous responses to the plaintiff's queries, they had also sent the plaintiff a copy of the terms with specific citations to the relevant sections on pension and survivor benefits.[57] Under such circumstances, *In re DeRogatis* concluded that the agents' ambiguous responses to the plaintiff did not rise to the level of materially misleading information.[58]

This case differs from *In re DeRogatis* in three respects: (1) as pled, Verizon, through its agents, directly and repeatedly informed Sullivan that she had a life insurance policy in the amount of $679,000; (2) in responding to Sullivan's queries about her policy, Verizon never referred Sullivan to clear plan terms that would have alerted her to her ineligibility for the promised benefits; and (3) Sullivan's plan was far from clear and unambiguous because it expressly incorporated her "enrollment materials, and other such communications relative to the Plan," including the Retirement Enrollment Worksheet indicating Sullivan's eligibility for a $679,000 life insurance policy and other documents of similar import.[59] When all is considered, Sullivan-Mestecky has plausibly alleged that Verizon breached its fiduciary duty to act "with ... care, skill, prudence, and diligence"[60] when it failed to provide Sullivan with "complete and accurate information" on her benefits.[61]

### CONCLUSION

For the reasons stated above, we AFFIRM the district court's dismissal of Sullivan-Mestecky's § 502(a)(3) claim against Prudential and its ruling granting Verizon and Prudential summary judgment on Sullivan-Mestecky's § 502(a)(1)(B) claim, VACATE the district court's dismissal of Sullivan-Mestecky's § 502(a)(3) claim against Verizon, and REMAND for

**Sullivan-Mestecky v. Verizon Communications Inc., --- F.3d ---- (2020)**
2020 WL 2820334

further proceedings consistent with the opinion.

--- F.3d ----, 2020 WL 2820334

**All Citations**

Footnotes

| | |
|---|---|
| \* | The Clerk of the Court is respectfully requested to amend the caption as set forth above. |
| 1 | App'x at 346. |
| 2 | *Id*. at 349. |
| 3 | *Id*. at 362. |
| 4 | *Id*. at 363. |
| 5 | *Id*. at 383. |
| 6 | *Id*. |
| 7 | *Id*. at 334–35. |
| 8 | In the same opinion, the district court found that most of Sullivan-Mestecky's state law claims were preempted by ERISA and dismissed them. It allowed Sullivan-Mestecky to pursue one state law claim based on an alleged settlement agreement between Sullivan and Verizon. Because Sullivan-Mestecky could not locate the alleged settlement agreement during discovery, the district court ultimately granted summary judgment for Verizon on that claim. None of the state law claims are at issue in this appeal. |
| 9 | *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 109 (2d Cir. 2003) (internal quotation marks omitted). |
| 10 | *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). |
| 11 | 29 U.S.C. § 1132(a)(1)(B). |
| 12 | *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (internal quotation marks omitted). |
| 13 | 509 F.3d 634 (4th Cir. 2007). |
| 14 | *Id*. at 641–42. |
| 15 | 29 U.S.C. § 1132(a)(3). |
| 16 | *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, No. 14-CV-1835, 2016 WL 3676434, at \*25 (E.D.N.Y. July 7, 2016). |
| 17 | 563 U.S. 421, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011). |

**Sullivan-Mestecky v. Verizon Communications Inc., --- F.3d ---- (2020)**

2020 WL 2820334

18   *Id*. at 441, 131 S.Ct. 1866.

19   *Id*. at 442, 131 S.Ct. 1866.

20   *Id*. at 440–43, 131 S.Ct. 1866.

21   Restatement (Second) of Contracts § 90(1) (Am. Law Inst. 1981).

22   *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 78 (2d Cir. 1996).

23   *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999).

24   *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172–73 (2d Cir. 2005) (quoting *Schonholz*, 87 F.3d at 79).

25   *Sullivan-Mestecky*, 2016 WL 3676434, at *30 (quoting *Perreca v. Gluck*, 295 F.3d 215, 225 (2d Cir. 2002)).

26   *Id*. at *30.

27   *Perreca*, 295 F.3d at 225.

28   29 U.S.C. § 1102(a)(1).

29   274 F.3d 76, 86 (2d Cir. 2001).

30   131 F. App'x 756, 759 (2d Cir. 2005) (non-precedential summary order).

31   *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 193, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

32   *Id*. at 194, 84 S.Ct. 275 (internal quotation marks omitted).

33   *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010).

34   App'x at 179–82.

35   *Id*. at 179, 183.

36   *Aramony*, 191 F.3d at 152.

37   *Id*. (internal quotation marks omitted).

38   563 U.S. at 442, 131 S.Ct. 1866.

**Sullivan-Mestecky v. Verizon Communications Inc., --- F.3d ---- (2020)**

2020 WL 2820334

| | |
|---|---|
| 39 | *Id.*; *see also Morrissey v. Curran*, 650 F.2d 1267, 1282 (2d Cir. 1981) ("[W]e see no reason not to permit a surcharge, when warranted by the facts, against one occupying any fiduciary status."). |
| 40 | 29 U.S.C. § 1104 (entitled "Fiduciary duties"). |
| 41 | *Varity Corp. v. Howe*, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). |
| 42 | 29 U.S.C. § 1104(a)(1)(B). |
| 43 | *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 8 (2d Cir. 1997) (internal quotation marks omitted) (describing ERISA fiduciaries' duties). |
| 44 | Like other circuits that have considered surcharge in ERISA cases post-*Amara*, we recognize a plaintiff's non-procurement of alternative coverage as a loss resulting from a fiduciary's material misrepresentation of the plaintiff's extent of, or eligibility for, coverage. Joining those circuits, we think it appropriate for a plaintiff to seek relief in the amount of the promised policy, not just in the amount of wrongly-accepted premiums or wrongly-paid taxes, under the equitable remedy of surcharge. *See, e.g., Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 881–82 (7th Cir. 2013); *McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176, 181 (4th Cir. 2012). |
| 45 | 563 U.S. at 440, 131 S.Ct. 1866. |
| 46 | *Id.* (citing *Baltzer v. Raleigh & Augusta R. Co.*, 115 U.S. 634, 645, 6 S.Ct. 216, 29 L.Ed. 505 (1885)). |
| 47 | *Amara v. CIGNA Corp.*, 775 F.3d 510, 525 (2d Cir. 2014). |
| 48 | *Id.* at 525 n.12. |
| 49 | Prudential suggests that granting Sullivan-Mestecky relief would require the reformation of the Group Life Insurance plan for all plan participants. Prudential, however, provides no authority for this suggestion, and we see no basis for adopting it. |
| 50 | 904 F.3d 174 (2d Cir. 2018). |
| 51 | *Id.* at 192. |
| 52 | *Id.* |
| 53 | Defendant-Appellee Verizon's Br. at 40. |
| 54 | *In re Derogatis*, 904 F.3d at 192. |
| 55 | Defendant-Appellee Verizon's Br. at 47. |
| 56 | 904 F.3d at 196 n.27. |
| 57 | *Id.* |
| 58 | *Id.* at 195–96. |

**Sullivan-Mestecky v. Verizon Communications Inc., --- F.3d ---- (2020)**

2020 WL 2820334

| | |
|---|---|
| 59 | Sullivan's plan stated, "This Plan document hereby incorporates by reference any summary plan descriptions, summaries of material modifications, enrollment materials, and other such communications relative to the Plan as may be approved from time to time by Verizon." App'x at 288. |
| 60 | 29 U.S.C. § 1104(a)(1)(B). |
| 61 | *Estate of Becker*, 120 F.3d at 10. |

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.